FILED

JANUARY 22, 2008

MICHAEL W. DOBBINS



**INSURANCE**

A MUTUAL COMPANY
WEST DES MOINES, IOWA
www.imtins.com

# SPECIAL BUSINESSOWNERS
## DECLARATIONS

INSURED

AGENCY BILL/Q

RENEWAL
Policy No: BOG6258          Previous Policy No:  BOG6258

Account No:   ACP0G6258
Agent No:   96005   1   0

**08 C 50016**

Named Insured

MADISON JAMES INC
DBA BACKSTREET STEAK & CHOP HS
216 COMMERCE
GALENA, IL  61036

Agent Name and Address

GOODMANN INS SERVICES INC
2774 UNIVERSITY
DUBUQUE, IA  52004

Policy Period: Effective from  04/01/2007  to  04/01/2008  12:01 A.M. Standard time at the above insured address.

| The Named Insured is:  CORPORATION |
| Business of the Insured is:  RESTAURANT |

**IN RETURN FOR YOUR PAYMENT OF THE REQUIRED PREMIUM, WE PROVIDE THE INSURANCE DESCRIBED IN THE POLICY.**

**PROPERTY:** Deductible: This policy contains a  $ 1,000   deductible.

| LOC/ BLDG | PROPERTY COVERAGES | DESCRIBED PREMISES AND COVERAGES | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|---|---|
| 01 01 | | 216 COMMERCE<br>GALENA, IL 61036<br>RESTAURANT | | $ 6,728.00 |
| | COVERAGE A | BUILDING - RC   AUTO INCR: 2% | $ 510,000 | $    INCL |
| | COVERAGE B | PERSONAL PROPERTY - RC | $ 150,000 | $    INCL |
| | COVERAGE C | LOSS OF INCOME - ACTUAL LOSS SUSTAINED | | $    INCL |
| | | EQUIPMENT BREAKDOWN | | $  200.00 |
| | | DINE PAK | | $  165.00 |

| LIABILITY INSURANCE LIMITS | | PREMIUM | LIABILITY COVERAGES | PREMIUM |
|---|---|---|---|---|
| Each Occurrence Limit | $ 500,000   per occurrence | $   INCL | | |
| Medical Payment Limit | $ 5,000   per person | $   INCL | | |
| General Aggregate Limit<br>(other than Products/Completed Work) | $1,000,000 | $   INCL | | |
| Products/Completed Work<br> Hazard Aggregate Limit<br>(This coverage does not apply to Professional Liability) | $1,000,000 | $   INCL | | |
| Legal Liability  (X) Fire ( ) Tenants  $ 50,000   per occurrence<br>(  ) If this is checked, we do not provide coverage<br>    for Products/Completed Work, and the each<br>    occurrence limit does not apply to Coverage N. | | $   INCL | | |

**POLICY FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

| | | | | | |
|---|---|---|---|---|---|
| BP3 | 1090 | | BP650 | 0300 | $ INCL |
| BP4 | 1090 | | BP663A | 0403 | $ INCL |
| BP309 | 0403 | $ INCL | CL1605 | 0606 | $ INCL |
| BO3004 | 0403 | $ INCL | GL890 | 0403 | $ INCL |
| BP0419 | 0403 | $ INCL | GL894 | 2.1 | $ INCL |
| BP0750 | 0503 | $ INCL | ML6023 | 1005 | $ INCL |
| BP0790 | 1202 | $ INCL | CP132 | 2.0 | $ INCL |
| BP1790 | 0606 | $ INCL | | | |
| BP200 | 0403 | $ INCL | | | |

EXHIBIT

"B"

| TOTAL PREMIUM | $ 7,093.00 |

*Mark A. Vasey*
Countersignature

11-01-07
Date

This is a true and certified copy of the policy for the term shown.

BO 1 (Ed. 4-06)



**INSURANCE**
A MUTUAL COMPANY
WEST DES MOINES, IOWA
www.imins.com

# BUSINESSOWNERS POLICY
## SCHEDULE OF MORTGAGEES

AGENCY BILL/Q

Policy Period

Policy Number:  BOG6258

From 04/01/2007 To 04/01/2008

**MORTGAGEE INFORMATION**

NAME:              PREMIER BANK

ADDRESS:           PO BOX 420
                   DUBUQUE, IA     52004-0420

LOAN NUMBER:
BANK NUMBER:
INTEREST:          MORTGAGEE – 216 COMMERCE, GALENA IL

NAME:

ADDRESS:

LOAN NUMBER:
BANK NUMBER:
INTEREST:

NAME:

ADDRESS:

LOAN NUMBER:
BANK NUMBER:
INTEREST:

NAME:

ADDRESS:

LOAN NUMBER:
BANK NUMBER:
INTEREST:

NAME:

ADDRESS:

LOAN NUMBER:
BANK NUMBER:
INTEREST:

NAME:

ADDRESS:

LOAN NUMBER:
BANK NUMBER:
INTEREST:

BP-3 (Ed. 10-90)



**INSURANCE**
A MUTUAL COMPANY
WEST DES MOINES, IOWA
www.imtins.com

# BUSINESSOWNERS POLICY
## SCHEDULE OF LOSS PAYEES

| | | Policy Period |
|---|---|---|
| Policy Number: BOG6258 | From | To |

**LOSS PAYEE INFORMATION**

NAME:          PREMIER BANK

ADDRESS:       PO BOX 420
               DUBUQUE, IA     52004-0420

LOAN NUMBER:
BANK NUMBER:
INTEREST:      LOSS PAYEE

NAME:

ADDRESS:

LOAN NUMBER:
BANK NUMBER:
INTEREST:

NAME:

ADDRESS:

LOAN NUMBER:
BANK NUMBER:
INTEREST:

NAME:

ADDRESS:

LOAN NUMBER:
BANK NUMBER:
INTEREST:

NAME:

ADDRESS:

LOAN NUMBER:
BANK NUMBER:
INTEREST:

NAME:

ADDRESS:

LOAN NUMBER:
BANK NUMBER:
INTEREST:

**BP-4 (Ed. 10-90)**

## Illinois' Carbon Monoxide Alarm Detector Act

The Carbon Monoxide Alarm Detector Act (Public Act 094-0741) became effective in Illinois on January 1, 2007. This law requires homeowners and landlords to install carbon monoxide detectors in all buildings with sleeping facilities. Alarms may be battery powered, plug-in with battery back-up or wired into the dwelling unit's AC power line with secondary battery back-up.

The major provisions of the law are as follows:

1.  Every dwelling unit must be equipped with at least one approved and operational carbon monoxide alarm within 15 feet of every room used for sleeping. It may be a combination smoke and carbon monoxide unit so long as the unit emits an alarm that differentiates the hazard.

2.  A "dwelling unit" means a room or suite of rooms used for human habitation, and includes single family residences, multiple family residences, and mixed use buildings.

3.  In structures that contain more than one dwelling unit, there must have at least one approved, operational carbon monoxide alarm within 15 feet of every room used for sleeping purposes.

4.  The owner must supply and install all required alarms. If the owner is a landlord, he/she must ensure that the units are operational at the time that a tenant takes possession of the unit. The landlord must furnish to at least one tenant in each unit written information regarding alarm testing and maintenance.

5.  The tenant is responsible for testing the unit after the lease commences and to replace any necessary batteries. The tenant must provide access to the landlord for repair or replacement of any defective alarms.

6.  Willful failure to install or maintain required carbon monoxide alarms is a Class B misdemeanor.

7.  Tampering with, removing, destroying, disconnecting or removing the batteries from any installed carbon monoxide alarm (except for inspection, maintenance or replacement) is a Class A misdemeanor for the first instance and a Class 4 felony for subsequent convictions.

Exempted from the statute are residential dwelling units which (1) do not rely on fossil fuels for heat, ventilation or hot water, (2) are not connected to a garage, and (3) are not sufficiently close to any ventilated source of carbon monoxide OR a residential unit that is not sufficiently close to any source of carbon monoxide so as to be at risk of receiving carbon monoxide from that source, as determined by the local building commissioner.



**IMPORTANT NOTICE**
**UPDATE ON TERRORISM COVERAGE**

This Notice is designed to update you on the status of the federal Terrorism Risk Insurance Program and the impact to your policy. This Notice does not form a part of your insurance contract. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

Carefully read your policy, including the endorsements attached to your policy.

In 2005, we advised you that the provisions of the Conditional Terrorism Exclusion endorsement attached to your policy would govern treatment of terrorism losses in the event of termination of the federal Terrorism Risk Insurance Program (TRIP) or in the event of certain changes to TRIP. On December 22, 2005, President Bush signed into law an extension of the Terrorism Risk Insurance Act (TRIA), providing for the continuation of TRIP, with a new expiration date of December 31, 2007.

Effective January 1, 2007, IMT Insurance Company has made the following changes to your policy:

1. Conditional Exclusion of Terrorism Endorsement reflects the changes to the Terrorism Risk Insurance Act, as extended on December 22, 2005.

2. Disclosure of Premium Endorsement reflects the revised expiration date of the Extension and updates the percentages of federal participation for any certified terrorism loss.

AR BP GL IM 01 07



# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM
# INSURANCE COVERAGE

Your policy contains or will contain coverage for certain losses caused by terrorism. Under your coverage, any losses resulting from certified acts of terrorism would be partially reimbursed by the United States government under a formula established by the Terrorism Risk Insurance Act, as extended on December 22, 2005. Under this formula, the United States government generally pays 90% (85% in 2007) of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0.00, and does not include any charges for the portion of losses covered by the United States Government.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS EXTENDED ON DECEMBER 22, 2005, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND I HAVE BEEN NOTIFIED OF THE PORTION OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.


_____
Policyholder/Applicant's Signature

_____
Print Name

_____
Date


The following excerpt from the Act is provided for your information:

According to Section 102(1) of the Terrorism Risk Insurance Act of 2002, "The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States --- (i) to be an act of terrorism; (ii) to be a violent act or an act that is dangerous to (I) human life; (II) property; or (III) infrastructure; (iii) to have resulted in damage within the United States, or outside the United States in the case of (I) an air carrier or vessel described in paragraph (5)(B); or (II) the premises of a United States mission; and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion." Section 102(1)(B) states, "No act shall be certified by the Secretary as an act of terrorism if (I) the act is committed as part of the course of war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000." Section 102(1)(C) and (D) specify that the determinations are final and not subject to judicial review and that the Secretary of the Treasury cannot delegate the determination to anyone.

This endorsement changes
the policy
- PLEASE READ THIS CAREFULLY -

# CONDITIONAL TERRORISM EXCLUSIONS
## (WITH LIMITED EXCEPTION)

### NOTICE

**The Terrorism Risk Insurance Program (the Program), as established under federal law, is scheduled to terminate while your policy is in effect.**

**The Terrorism Exclusions found in this endorsement will apply only if the federal government does not renew, extend, or otherwise replace the Program or if the conditions, definitions, or requirements of the Program are changed by the federal government and federal law no longer requires that we make Terrorism Coverage available to you.**

1. The Terrorism Exclusions set forth by this endorsement become effective on the earliest of the following:

    a. the date that the federal Terrorism Risk Insurance Program (the Program) established by the Terrorism Risk Insurance Act of 2002 has terminated with respect to the type of insurance provided by the policy to which this endorsement applies; or

    b. the effective date of a renewal, extension, or replacement of the Program, if federal law no longer requires that "we" make terrorism coverage available to "you" and the Program has been renewed, extended, or replaced subject to changes that:

        1) redefine terrorism; or

        2) increase "our" financial exposure under the Program; or

        3) impose requirements on insurance coverage for terrorism that differ from the terms, amounts, or other limitations that otherwise govern coverage for loss or damage under the "terms" of the policy to which this endorsement applies.

    If a condition described above under items 1.a. and 1.b. occurs prior to the effective date of the policy period to which this endorsement applies, the Terrorism Exclusions set forth by this endorsement apply as of the effective date of that policy period.

2. If the Terrorism Exclusions set forth by this endorsement become effective, these Terrorism Exclusions:

    a. supercede any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terror-ism", and or "non-certified terrorism loss" that

    also apply to the policy to which this endorsement applies, but only with respect to:

        1) under the Property Coverages, loss or damage caused by one or more incidents of terrorism that occur on or after the effective date of these Terrorism Exclusions; and

        2) under the Commercial Liability Coverages, one or more incidents of terrorism which result in injury or damage that occurs on or after the effective date of these Terrorism Exclusions; and

    b. remain in effect unless "we" notify "you" of changes to these Terrorism Exclusions.

3. If none of the conditions described above under items 1.a. and 1.b. occur, any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the policy to which this endorsement applies continue to apply until "we" notify "you" of changes to such other endorsements.

4. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:

    "Terrorism" means activities against persons, organizations, or property of any nature:

    a. that involve the following or preparation for the following:

        1) use or threat of force or violence; or

        2) commission or threat of a dangerous act; or

BP 1790 06 06          Copyright, American Association of Insurance Services, Inc., 2006          AAIS

3) commits or threatens an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. when one or both of the following applies:

1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

5. The following exclusion is added under the Property Coverages:

**TERRORISM EXCLUSION**

Subject to the Fire Exception, "we" will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

e. the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico, and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, "we" will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

Item 5.e. above describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Terrorism Exclusion will apply to that incident. When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Property Coverages of the policy to which this endorsement applies.

**Fire Exception** – If "terrorism" results in fire, "we" will pay for the loss or damage caused by that fire, subject to the "limit" and all "terms" that apply to the affected property. This Fire Exception applies only to direct loss or damage by fire to covered property. Therefore, for example, this Fire Exception does not apply to insurance provided under Income, Earnings, Extra Expense, or Legal Liability coverages, endorsements, coverage parts, or policy forms.

6. When the Terrorism Exclusion set forth under item 5. of this endorsement applies due to an incident of "terrorism" described above under items 5.a. or 5.b., that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the policy to which this endorsement applies.

7. The following exclusion is added under the Commercial Liability Coverages:

**TERRORISM EXCLUSION**

"We" will not pay for injury or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

Copyright, American Association of Insurance Services, Inc., 2006

BP 1790 06 06　　　　AAIS

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

e. the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico, and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, "we" will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

f. fifty or more persons sustain death or serious physical injury. For the purpose of this provision, serious physical injury means:

   1) physical injury that involves a substantial risk of death; or

   2) protracted and obvious physical disfigurement; or

   3) protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds described above under items 7.e. or 7.f. are exceeded.

Items 7.e. and 7.f. above describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Terrorism Exclusion will apply to that incident.

When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Commercial Liability Coverages of the policy to which this endorsement applies.

8. The following provisions are added:

a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the policy to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that policy under:

   1) exclusions that address war, military action, or nuclear hazard; or

   2) any other exclusion.

b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the policy to which this endorsement applies under:

   1) exclusions that address war, military action, or nuclear hazard; or

   2) any other exclusion.

Copyright, American Association of Insurance Services, Inc., 2006

BP 1790 06 06

AAIS

**TERRORISM PREMIUM**
**DISCLOSURE NOTICE**
**- PLEASE READ THIS CAREFULLY -**

CL 1605 06 06
AAIS

# CERTIFIED TERRORISM LOSS DISCLOSURE OF
# PREMIUM AND FEDERAL SHARE OF INSURED LOSSES

(The entries required to complete this endorsement will be shown below, on the "declarations",
or on the "schedule of coverages".)

### SCHEDULE

A.  Certified Terrorism Loss Premium Through December 31, 2007:  $ 0.00

B.  (This item may be left blank, see item 4. below for more information.)

Estimated Certified Terrorism Loss Premium Beyond Date Shown Above:  $ 0.00

C.  (This item may be left blank; see item 2. below for more information.)

Federal share of terrorism losses: _____ %, for losses occurring in year 20 ____

Federal share of terrorism losses: _____ %, for losses occurring in year 20 ____

Additional information, if any, concerning terrorism premium:

1.  The portion of "your" premium that is attributed to coverage for "certified terrorism loss" is shown in the Schedule above.

2.  Coverage for "certified terrorism loss", to the extent that such coverage is provided by this policy or Coverage Part, will be partially reimbursed by the United States Government, Department of Treasury under a federal program. Under that program, the United States pays the following percentages of the amount of covered "certified terrorism loss" that exceeds the statutorily established deductible that "we" retain:

    a.  90% for losses occurring in 2006; and

    b.  85% for losses occurring in 2007.

    If the federal program is extended beyond 2007, the percentage of "certified terrorism loss" that exceeds the statutorily established deductible that "we" retain and that is paid by the United States is shown under item C. in the Schedule above.

3.  The Certified Terrorism Loss Premium is calculated based in part on the federal reimbursement of terrorism losses established by the federal program. That program is scheduled to terminate on the date shown in item A. of the Schedule above, unless renewed, extended, or replaced by the federal government.

4.  The following provisions apply if the Conditional Terrorism Exclusion endorsement is applicable.

    a.  Continuation of coverage for "certified terrorism loss", or termination of such coverage, will depend on whether the federal program is renewed, extended, or replaced without change or ceases on the date shown in item A. of the Schedule above, subject to the "terms" of the Conditional Terrorism Exclusion endorsement.

    b.  If coverage for "certified terrorism loss" continues and no estimated premium is shown in item B. of the Schedule above, "we" will calculate the premium for "certified terrorism loss" for the period beyond the date shown in item A. of the Schedule; and "we" will charge additional premium, as determined by "our" calculations.

    c.  If an estimated premium is shown in item B. of the Schedule for the period beyond the date shown in item A. of the Schedule, and "we" will recalculate that premium when the status of the federal program is determined; and "we" will charge additional premium or refund excess premium, as determined by "our" calculations.

5.  If the Conditional Terrorism Exclusion endorsement is not applicable, continuation of coverage for terrorism loss will not depend on whether the federal program is renewed, extended, or replaced without change or ceases on the date shown in item A. of the Schedule above. When the status of the federal program is determined, "we" will recalculate the estimated premium shown in item B. of the Schedule for the period beyond the date shown in item A. of the Schedule; and "we" will charge additional premium or refund excess premium, as determined by "our" calculations.

6.  If "we" notify "you" of an additional premium charge, the additional premium will be due as specified in "our" notice.

CL 1605 06 06

Copyright, American Association of Insurance Services, Inc., 2006
AAIS

**IMT INSURANCE**
A MUTUAL COMPANY
WEST DES MOINES, IOWA

BUSINESSOWNERS
BO 3004 04 03

## DINE PAK
### RESTAURANT ENDORSEMENT

## SCHEDULE

**Described Premises:**

216 COMMERCE, GALENA IL

| Coverages | Limits |
|---|---|
| Antennas | $2,500 Each Occurrence |
| Arson Reward | $10,000 Maximum Limit Per Policy Period |
| Back Up of Sewer or Drain | $5,000 Maximum Limit Per Policy Period |
| Credit or Fund Transfer Card Invoices | $5,000 Each Occurrence |
| Employee Dishonesty | $5,000 Each Occurrence |
| Fences | $2,500 Each Occurrence |
| Fire Department Service Charge | $5,000 Each Occurrence |
| Fire Extinguisher Systems Recharge | $10,000 Each Occurrence |
| Inventory and Appraisals Expense | $1,000 Each Occurrence |
| Lock Replacement | $1,000 Each Occurrence |
| Money & Securities | Inside the premises:   $15,000   Each Occurrence<br>Outside the premises:   $5,000   Each Occurrence |
| Off Premises Power Failure | $5,000 Each Occurrence |
| Personal Property – Newly Acquired | $250,000 Each Occurrence |
| Personal Property of Others | $1,000 Each Person<br>$15,000 Each Occurrence |
| Pollutant Clean Up & Removal | $15,000 Maximum Limit Per Policy Period |
| Signs (not attached to Buildings) | $5,000 Each Occurrence |

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverages described in this endorsement during the policy period. This coverage is subject to the "terms" of this endorsement, the Common Policy Conditions, and the Property Coverage Section of this policy.

The "terms" and "limits" of this endorsement apply separately to each premises described in the Schedule of this endorsement.

### PROPERTY COVERED

Item 1. under **COVERAGE A - BUILDINGS** section is deleted and replaced by:

completed additions and signs that are a permanent part of the building to which they are attached;

### ADDITIONAL PROPERTY COVERAGES

1.  The following ADDITIONAL PROPERTY COVERAGE limits are increased:

    a.  Item 3. Fire Department Service Charges "limit" is increased from $1,000 to $5,000.

    b.  Item 5. Pollutant Clean Up and Removal "limit" is increased from $10,000 to $15,000.

c. Item 13. Money and Securities inside on the premises "limit" is increased to $15,000 and the outside the premises "limit" is increased to $5,000, unless higher "limits" are shown on the schedule or on the "declarations".

2. The following ADDITIONAL PROPERTY COVERAGES are amended:

   a. Item 8. Antennas, Fences, and Signs is deleted and replaced by the following:

   For the following types of property, "we" pay up to:

   1) $2,500 for loss to "your" outdoor radio, television, satellite, dish-type, or other antennas including their masts, towers, and lead-in wiring;

   2) $2,500 for loss to "your" outdoor fences; and

   3) $5,000 for loss to "your" outdoor signs, other than signs attached to covered buildings. "We" will also pay up to 10% of the outdoor sign "limit" for loss or damage to signs located off the described premises.

   The loss must be caused by a covered peril. However, loss to fences is covered only for the perils of aircraft, civil commotion, explosion, fire, lightning, or riot.

   b. Item 10. Fire Extinguisher Systems Recharge Expense is deleted and replaced by:

   "We" pay up to $10,000 for any one occurrence for:

   1) the cost of recharging or replacing, whichever is less, "your" fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 1000 feet of the described premises;

   2) the cost to restore the described premises to its original condition prior to an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system; and

   3) the actual loss of net income sustained due to a suspension of operations during the "restoration period" as a result of an accidental discharge from a fire extinguisher or a fire extinguishing system at the described premises. "We" will only pay for the loss after the first 24 hours following the accidental discharge.

The loss of net income is calculated in the same manner as under COVERAGE C – LOSS OF INCOME.

3. The following ADDITIONAL PROPERTY COVERAGES are added:

   a. **Credit Or Fund Transfer Card Invoices** – "We" pay up to $5,000 for "your" loss of Credit Card Invoices resulting from a covered peril. This includes all shipments of credit card invoices, provided such shipments are:

   1) Recorded on "your" records prior to shipment; and

   2) Available to any authorized Company representative at all reasonable times.

   In addition to the PERILS EXCLUDED and ADDITIONAL EXCLUSIONS, "we" do not pay for loss caused by or resulting from:

   1) Any dishonest act committed by "your" "employees" or persons to whom property is entrusted;

   2) Damage to unattended property in or on any motor vehicle other than a public conveyance, unless there is forcible entry into the closed and locked vehicle. There must be visible marks of forcible entry; or

   3) Theft of a vehicle that is not recovered within 30 days.

   b. **Lock Replacement** – "We" pay up to $1,000 in any one occurrence to cover the cost to repair or replace door locks on the described premises when:

   1) "your" door keys are lost or stolen in a covered theft loss; or

   2) "your" door locks are damaged in a covered theft loss.

   A $50 deductible will apply to each occurrence.

   c. **Arson Reward** - "We" pay up to $10,000 in a policy term as a reward for information that leads to an arson conviction. The conviction must be for a covered fire loss. The amount "we" pay is not increased by the number of persons involved in providing the information.

   No deductible applies to this coverage.

**d. Employee Dishonesty**

1) "We" cover direct loss or damage to business personal property, including "money" and "securities", that "you" own, hold, or for which "you" are legally liable. "We" pay for only those losses resulting from dishonest acts:

   a) committed by any of "your" employees, acting alone, or in collusion with other persons; and

   b) that occur within the policy period.

   Dishonest acts as used in this coverage means dishonest or fraudulent acts committed with the apparent intent to cause "you" to sustain loss or damage and to obtain financial benefit for any employee, person, or organization. The financial benefit does not include earned salaries, commissions, bonuses, fees, profit sharing, or other employee benefits.

2) "We" will also cover loss that would have been covered by prior insurance, except that the time to discover the loss had expired, and which would be covered by this policy had it been in effect when the acts or events causing the loss or damage occurred. This coverage is limited to the lesser of the "limits" applicable to the prior insurance or the "limit" of this coverage. The coverage described in this paragraph applies only if this Employee Dishonesty Coverage replaces prior employee dishonesty coverage and became effective on the expiration or termination date of the prior coverage.

3) "We" will also cover loss caused by an employee who is temporarily out of the "basic territory" for not more than 90 days.

4) PERILS EXCLUDED and ADDITIONAL EXCLUSIONS do not apply to this coverage, except for the following items:

   1. Civil Authority;

   4. Nuclear Hazard; and

   8. War.

   In addition to the above exclusions, "we" do not pay for loss or damage:

   a) occurring after discovery of any dishonest act committed by the employee whether before or after being employed by "you". This includes discovery by "you" or by any of "your" partners, officers, or directors not in collusion with the employee;

   b) resulting from an act that "you" or any of "your" partners commit, whether acting alone, or in collusion with any employees, or other persons;

   c) where the only proof of the loss or amount of the loss is dependent upon an inventory or a profit and loss computation;

   d) that is not discovered within one year of the end of the policy period;

   e) occurring outside of the "basic territory", except as provided in paragraph 3) above; or

   f) legal expenses or any indirect loss.

4) The most "we" will pay in any one occurrence is $5,000, unless a higher limit is shown on the Schedule or on the "Declarations", even though the occurrence may extend over a number of policy periods. All loss or damage caused by one or more persons, and involving a single act or series of acts is considered one occurrence.

**e. Off Premises Power Failure** – "We" cover "your" loss:

1) to covered property caused by the failure of power service to the described premises, and

2) of earnings and the necessary expenses that "you" incur caused by the interruption of power service to the described premises,

when the interruption of power service takes place away from the described premises and is caused by a covered peril.

"We" do not pay for loss resulting from damage to electrical lines.

The most that "we" will pay for this ADDITIONAL PROPERTY COVERAGE in any one occurrence is $5,000.

f. **Back Up of Sewers and Drains**

1) "We" pay for direct physical loss to covered property caused by:

   a) Water which backs up through sewers or drains; or

   b) Water which overflows from a sump pump even if such overflow results from the mechanical breakdown of the sump pump. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical failure.

2) "We" do not pay for loss or damage resulting from an "insured's" failure to perform routine maintenance or repair necessary to keep a sewer or drain free from obstructions.

3) The most "we" will pay under this coverage for all direct physical loss or damage occurring during the policy period is $5,000.

g. **Inventory and Appraisals Expense**

"We" pay up to $1,000 for reasonable expenses, for the taking of inventory or appraisals, incurred by "you" at "our" request to assist "us" in the determination of the amount of a covered loss.

"We" do not pay for:

1) any expense incurred under the OTHER CONDITIONS – Appraisal Section; or

2) any public adjusters' fees.

h. **Food Contamination**

If the Board of Health or any other governmental authority has ordered that "you" close "your" business due to the discovery of or suspicion of food contamination, "we" will pay:

1) "your" expenses to replace the food which is, or is suspected to be, contaminated; and

2) the loss of earnings due to the ordered suspension of the food operation. The coverage for loss of earnings will begin 24 hours after "you" receive notice of closing from the Board of Health or any other governmental authority.

Food contamination means an incidence of food poisoning to one or more of "your" customers as a result of tainted food "you"

purchased, because food has been improperly stored, handled or prepared.

The most that "we" will pay for this coverage in a policy period is $5,000.

---

**EXTENSIONS OF COVERAGE**

The EXTENSIONS OF COVERAGE section is amended as follows:

1. The following "limits" are increased for extensions of Coverage A - Buildings:

   a. Item 2. Newly Acquired Buildings "limit" is increased from $250,000 to $500,000.

   b. Item 3. Trees, Shrubs, and Plants "limit" is increased from $1,500 to $2,000 each occurrence. The $500 for any one tree, shrub, or plant maximum remains the same.

2. Item 2. Personal Property – Acquired Locations "limit" is increased from $100,000 to $250,000.

3. Item 4. Personal Property of Others under extensions of Coverage B is deleted and replaced by:

   Personal Property of Others – "We" pay for loss or damage to personal property of "your" customers and guests caused by a covered peril at each described premises.

   "We" will not pay for loss or damage to "money", jewelry, or vehicles, vehicle equipment or personal property in vehicles.

   The most "we" will pay to each customer or guest is $1,000. The most "we" will pay in any one occurrence is $15,000.

   This coverage is only for the benefit of the owners of the personal property.

---

**PERILS EXCLUDED**

The PERILS EXCLUDED section is revised as follows:

1. Item 5. Utility Failure is revised to read as follows:

   Except as provided for in ADDITIONAL PROPERTY COVERAGES – Off Premises Power Failure, "we" do not pay for loss caused by interruption of power or other utility services resulting from any cause if the interruption takes place away from the described premises. Interruption includes reduced or increased voltage, low or high pressure, or other interruptions of normal services.

   "We" do pay for the direct physical loss by a covered period which occurs on the described premises as a result of any power interruption.

BO 3004 04 03

2. Exclusion 7. Water is deleted and replaced by the following:

Water – Except as provided in the ADDITIONAL PROPERTY COVERAGE for Back Up of Sewers and Drains, "we" do not pay for loss caused by:

a. flood, surface water, waves, tidal water, or the overflow of a body of water. This includes spray that results from these whether driven by wind or not;

b. mudslide or mudflow;

c. water that backs up or overflows from a sewer, sump, or drain; and

d. water below the surface of the ground. This includes water that exerts pressure on; or flows, seeps, or leaks through or into:

   1) basements whether paved or not;

   2) doors, windows, or other openings;

   3) foundations, floors, or paved surfaces; or

   4) swimming pools, septic tanks, or other structures.

If fire, explosion, or sprinkler leakage results, "we" do pay for the resulting loss.

## HOW MUCH WE PAY

1. Item 2. Deductible, is deleted and replaced by:

Deductible – Except as provided under items a. and b. below or if stated elsewhere in the policy, "we" will pay only that part of "your" loss over the deductible amount stated on the "declarations" in any one occurrence.

a. The most "we" will deduct from "your" loss under the following coverages is $250 in any one occurrence:

   1) "Money" and "Securities".

   2) Glass.

   3) Outdoor Signs.

   4) Employee Dishonesty.

   5) Off Premises Power Failure.

   6) Pollutant Clean Up and Removal.

   7) Personal Property of Others.

   If an occurrence results in loss under any of the coverages listed above, as well as in loss under other coverages, the $250 deductible amount described in this provision will be subtracted from the deductible amount shown on the "declarations".

b. No deductible applies to:

   1) Accounts Receivable;

   2) Fire Department Service Charge;

   3) Coverage C – Loss of Income;

   4) Fire Extinguishers System Recharge; and

   5) Arson Reward.

2. Item 8. Signs Attached to Buildings is deleted.

BO 3004 04 03

This endorsement changes the Commercial
Liability Coverages provided by this policy.
**- PLEASE READ THIS CAREFULLY -**

# LIABILITY COVERAGE
## DESIGNATED PREMISES OR PROJECT

*(The entries required to complete this endorsement will be shown below or on the "declarations".)*

**Premises:**

SEE SCHEDULE OF COVERED LOCATIONS

**Project:**

The Commercial Liability Coverage is amended as follows:

---

**EXCLUSIONS**

---

**EXCLUSIONS THAT APPLY TO BODILY INJURY, PROPERTY DAMAGE, AND/OR PERSONAL AND ADVERTISING INJURY**

The following exclusions are added:

"We" do not pay for "bodily injury", "property damage", or "personal and advertising injury":

1. that arises out of the ownership, maintenance, or use of the premises other than those described above;

2. that arises out of operations that are necessary or incidental to the ownership, maintenance, or use of premises other than those described above; or

3. that arises out of a project other than that described above.

BP 309 04 03      Includes copyrighted material from AAIS, used with their permission, MCMXC      AAIS

- PLEASE READ IT CAREFULLY -

# EQUIPMENT BREAKDOWN

(The entries required to complete this endorsement will be shown below or on the "declarations".)

## DEDUCTIBLE

The following deductible amount will apply to each loss after all other adjustments have been made.

$ $1,000

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described in this endorsement during the policy period. This coverage is subject to the "terms" of this endorsement, the Common Policy Conditions, and the "terms" applicable to the Property Coverage Section of this policy, except as provided below.

## DEFINITIONS

1. The definition of "restoration period" is deleted and replaced by the following definition with respect to the coverage provided by this endorsement:

   a. "Restoration period" means the time it should reasonably take to resume "your" normal business activities starting from the date of loss at the described premises caused by an "accident", and ending on the date the property should be rebuilt, repaired, or replaced. This is not limited by the expiration date of the policy.

   This does not include any increase in time due to the enforcement of any ordinance, law, or decree that regulates or requires:

   1) the construction, use, repair, or demolition of any property;

   2) the testing, evaluating, observing, or recording the existence, level, or effects of "pollutants"; or

   3) the clean up, removal, containment, treatment, detoxification, or neutralization of "pollutants".

2. The following additional definitions apply to the coverage provided by this endorsement:

   a. "Accident" means direct physical loss consisting of:

   1) mechanical breakdown;

   2) rupturing or bursting of moving parts of machinery caused by centrifugal force;

   3) loss caused by arcing or electrical currents other than lightning;

   4) explosion of steam boilers, steam pipes, steam turbines, or steam engines that "you" own or lease or that are operated under "your" control;

   5) loss to steam boilers, steam pipes, steam turbines, or steam engines caused by any condition or occurrence within such equipment; or

   6) loss to hot water boilers or heaters caused by any condition or occurrence within such equipment.

   b. "Covered equipment", unless otherwise specified in the "declarations", means property covered under Coverage A or Coverage B built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission, or utilization of energy.

   "Covered equipment" does not mean:

   1) equipment manufactured by "you" for sale;

   2) cabinets or compartments that cover or house "covered equipment";

**BP 650 03 00**    Copyright, American Association of Insurance Services, 2000    **AAIS**

3) "computer" and "electronic media records" unless used to control or operate other "covered equipment"; however, Computer Coverage is provided for "computer" and "electronic media and records" under Additional Coverages.

4) buildings or structures, including air supported buildings or structures;

5) foundations that supported "covered equipment";

6) sewer and other underground piping and vessels, water piping, or sprinkler system piping. However, "covered equipment" does include:

   a) boiler feedwater and condensate return piping; and

   b) water piping for water heating, air conditioning, or refrigeration systems;

7) construction or excavation equipment; or

8) vehicles or self-propelled machines. However, any property that is stationary, permanently installed at a covered location, and receives electrical power from an external power supplier will not be considered a vehicle or self-propelled machine.

c. "Perishable stock" means personal property preserved and maintained under controlled conditions and susceptible to loss or damage if the controlled conditions change.

## PROPERTY COVERED

1. "We" cover direct physical loss to property covered under Coverage A and Coverage B caused by a covered peril, as described in the Perils Covered section of this endorsement.

2. When this endorsement is attached to form BP-200, item 2., Boilers, under Additional Property Excluded and Limitations, does not apply with respect to the coverage provided by this endorsement.

"We" also provide the following additional coverage for loss caused by or resulting from an "accident" to "covered equipment".

The "limit" for each additional coverage is a part of, and not in additional to, the "limit" for the covered property.

1. **CFC Refrigerants** – "We" pay for the additional cost to repair or replace covered property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances.

   Additional costs means those in excess of what would have been required to repair or replace covered property, had no CFC refrigerant been involved.

   Subject to the "limit" for this additional coverage, "we" pay no more than the least of the following:

   a. the cost to repair the damaged property and replace any lost CFC refrigerant;

   b. the cost to repair the damaged property, retrofit the system to accept a non-CFC refrigerant, and charge the system with a non-CFC refrigerant; or

   c. the cost to replace the system with one using a non-CFC refrigerant.

   "We" also pay for additional loss as described under the Spoilage or Loss of Income Coverages provided by this endorsement, caused by the presence of a refrigerant containing CFC substances.

   The most "we" pay for loss or damage under this coverage, including Spoilage and Loss of Income, is $25,000.

2. **Computer Coverage** – "We" pay for direct physical loss or damage to "your" "computer" and "electrical media and records".

   The most "we" pay for loss or damage under this coverage, including Loss of Income, is $25,000.

   "Computers" used primarily to control or operate "covered equipment" will not be subject to the Computer Coverage "limit".

Copyright, American Association of Insurance Services, 2000

BP 650 03 00

AAIS

Case 2:08-cv-50016    Document 11-3    Filed 01/22/2008    Page 19 of 76

3. **Expediting Expenses** – "We" pay for reasonable extra costs to expedite permanent repairs or permanent replacement and make temporary repairs to damaged covered property.

   The most "we" pay under this coverage is $25,000.

4. **Pollutants** – "We" pay for the additional cost to repair or replace covered property because of contamination by "pollutants". This includes the additional expenses to clean up or dispose of contaminated property.

   Additional costs mean those in excess of what would have been required to repair or replace damage to covered property, had no "pollutants" been involved.

   The most "we" will pay for loss or damage under this coverage, including Spoilage and Loss of Income, is $25,000.

5. **Spoilage** –

   a. "We" pay for loss to "your" "perishable stock" due to spoilage. "We" also pay:

      1) for loss to "your" "perishable stock" caused by contamination from the release of a refrigerant, including but not limited to ammonia; and

      2) any necessary expenses "you" incur to reduce the amount of loss under this coverage. "We" pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

   b. "We" also pay for loss to "your" "perishable stock" caused by an "accident" to property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission, or utilization of energy and which is owned by a utility, a landlord, or another supplier who provides "you" with:

      1) electrical power, gas, or water;

      2) communications;

      3) waste disposal; or

      4) air conditioning, refrigeration, heating, air or steam.

c. If "you" are able to replace the "perishable stock", "our" payment will be determined in accordance with the Valuation of Property Losses provision. If "you" are not able to replace the "perishable stock" before its anticipated sale, the amount of "our" payment will be determined on the basis of the selling price of the "perishable stock" at the time of the "accident", less discounts and expenses "you" otherwise would have had.

   d. "We" do not pay for loss that results from "your" failure to use all reasonable means to protect "perishable stock" from loss or damage following an "accident".

   The most "we" pay for loss or damage under this coverage is $25,000.

## EXTENSION OF COVERAGE C

"We" provide the following extensions of Coverage C – Loss of Income.

1. **Loss of Income** – The coverage provided under Coverage C – Loss of Income is extended to provide coverage during the "restoration period" when "your" normal business activities are interrupted due to an "accident" to "covered equipment" during the policy period.

2. **Service Interruption** – The coverage provided under Coverage C – Loss of Income is also extended to pay for "your" loss of earnings and the necessary extra expense "you" incur during the period when "your" normal business operations are interrupted as a result of an "accident" to property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission, or utilization of energy and which is owned by a utility, a landlord, or another supplier who provides "you" with:

   a. electrical power, gas, or water;

   b. communications;

   c. waste disposal; or

   d. air conditioning, refrigeration, heating, air, or steam.

   The period of interruption is the time beginning when service is interrupted and ending when service has been completely restored to the premises.

When a "limit" is shown for Coverage C, these extensions do not increase the "limit".

BP 650 03 00    Copyright, American Association of Insurance Services, 2000    AAIS

## PERILS COVERED

"We" cover risks of direct physical loss caused by or resulting from an "accident" to "covered equipment" unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

"We" do not pay for loss or damage under the coverage provided by this endorsement if one or more of the following exclusions apply to the loss:

1. Except as stated under items 2. through 5. below, the covered provided by this endorsement is subject to the "terms" of Perils Excluded in form BP-200.

2. **Certain Computer – Related Losses** – With respect to the coverage provided by this endorsement, the next to the last paragraph in Certain Computer – Related Losses under Perils Excluded is deleted and replaced with the following:

   However, if excluded loss or damage, as described in Paragraph a. above results in an "accident", "we" will pay for the loss or damage caused by that "accident".

3. **Earth Movement or Volcanic Eruption** – "We" do not pay for loss due to an "accident" caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to, earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting or earth.

   This exclusion applies regardless of other caused or events that contribute to or aggravate the loss, whether such causes or events acts to produce the loss before, at the same time as, or after the excluded cause or event.

4. **Water** – With respect to the coverage provided by this endorsement, Water under Perils Excluded is amended by the following addition:

   "We" do pay for the direct expenses to dry out electrical "covered equipment" required as a result of water.

5. **Fungi, Wet Rot, Dry Rot or Bacteria** – "We" do not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident":

   Any mold, "fungus", mildew or yeast, whether or not such matter is living, including any spores, toxins, vapor, gas, emissions or substances produced by or emanating from such mold, "fungus", mildew or yeast. This includes, but is not limited to, costs to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of such mold, "fungus", mildew, or yeast. However, we will pay for personal property that is "perishable stock", to the extent that spoilage of such property is covered under Spoilage coverage.

## ADDITIONAL EXCLUSIONS

Except as stated below, the covered provided by this endorsement is subject to the "terms" of Additional Exclusions in form BP-200.

1. The following provisions under Additional Exclusion do not apply with respect to the coverage provided by this endorsement:

   a. Explosion;

   b. Electrical Currents; and

   c. Mechanical Breakdown.

2. The following provisions under Additional Exclusions are deleted and replaced with respect to the coverage provided by this endorsement:

   a. **Animals** – "We" do not pay for loss caused by nesting or infestation, or discharge or release of waste products or secretions of animals, including birds or insects. "We" do pay for any resulting loss caused by an "accident".

   b. **Contamination or Deterioration** – "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, "fungus", mildew, mold, rot, rust, or any quality, fault, or weakness in property that causes it to damage or destroy itself. "We" do pay for any resulting loss caused by an "accident".

BP 650 03 00          Copyright, American Association of Insurance Services, 2000          AAIS

c. **Errors or Omissions** – "We" do not pay for loss caused by errors or omissions in :

1) programming, processing, or storing data, as described under "electrical media and records" or in "computer" operations; or

2) processing or copying "valuable papers and records"; or

3) giving improper instructions.

"We" do pay for any resulting loss caused by an "accident".

d. **Installation, Testing, Repair** – "We" do not pay for loss caused by errors or deficiency in design, installation, testing, maintenance, modification, or repair of "your" "computer" system including "electronic media and records".

"We" do pay for any resulting loss caused by an "accident".

e. **Wear and Tear** – "We" do not pay for loss caused by wear and tear, marring, or scratching. "We" do pay for any resulting loss caused by an "accident".

3. The following exclusion is added with respect to the coverage for Spoilage and Service Interruption provided by this endorsement:

"We" do not pay for loss caused by: aircraft; civil commotion; explosion (except for steam or centrifugal explosion); falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; or windstorm.

## HOW MUCH WE PAY

The following deductible provision replaces any other deductible with respect to the coverage provided by this endorsement:

**Deductible** – The deductible amount shown on the schedule above will apply to each loss after all other adjustments have been made.

### ADDITIONAL CONDITIONS

1. **Jurisdictional Inspections** – If any property that is "covered equipment" under the Equipment Breakdown coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, "we" agree to perform such inspection on "your" behalf.

2. **Suspension** – When any "covered equipment" is discovered to be in or exposed to a dangerous situation or condition, any representative of "ours" may immediately suspend the insurance coverage against loss from an "accident" to that equipment. "We" can do this by mailing or delivering a written notice of suspension to "your" address as shown in the "declarations", or at the address where the equipment is located.

Once so suspended, "your" insurance can be reinstated only by written notice from "us". If "your" insurance is so suspended, "you" will get a pro rata premium refund. But the suspension is effective even if "we" have not yet offered or made a refund.

3. **Environmental, Safety and Efficiency Improvements** – If "covered equipment" requires replacement due to an "accident", "we" pay "your" additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

However, "we" will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not increase any of the applicable "limits". This condition does not apply to any property valued on an Actual Cash Value basis.

Copyright, American Association of Insurance Services, 2000

BP 650 03 00 AAIS

This endorsement changes the
Property Coverages provided by this policy
**- PLEASE READ THIS CAREFULLY -**

# LOSS PAYABLE OPTIONS

(The entries required to complete this endorsement will be shown below or on the "declarations".)

| Prem. No. | Bldg. No. | Option No. | Description of Property | Name and Address of Loss Payee |
|---|---|---|---|---|
| 001 | 001 | 1 | 216 COMMERCE, GALENA, IL | PREMIER BANK<br>PO BOX 420<br>DUBUQUE, IA 52004 |

In addition to the policy "terms" which are contained in other sections of the Property Coverage, the following conditions apply to the property described on the schedule and only when indicated by an option number:

**LOSS PAYABLE – OPTION 1**
Any loss shall be adjusted with "you" and shall be payable to "you" and the loss payee shown on the schedule as "your" and their interests appear.

**LENDER'S LOSS PAYABLE – OPTION 2**
Any loss shall be payable to "you" and the loss payee shown on the schedule as interests appear. If more than one loss payee is named, they shall be paid in order of precedence.

The insurance for the loss payee continues in effect even when "your" insurance may be void because of "your" acts, neglect, or failure to comply with the coverage "terms". The insurance for the loss payee does not continue in effect if the loss payee is aware of changes in ownership or substantial increase in risk and does not notify "us".

If "we" cancel this policy, "we" notify the loss payee at least ten days before the effective date of cancellation if "we" cancel for "your" nonpayment of premium, or 30 days before the effective date of cancellation if "we" cancel for any other reason.

"We" may request payment of the premium from the loss payee, if "you" fail to pay the premium.

If "we" pay the loss payee for a loss where "your" insurance may be void, the loss payee's right to collect that portion of the debt from "you" then belongs to "us". This does not affect the loss payee's right to collect the remainder of the debt from "you". As an alternative, "we" may pay the loss payee the remaining principal and accrued interest in return for a full assignment of the loss payee's interest and any instruments given as security for the debt.

If "we" choose not to renew this policy, "we" give written notice to the loss payee at least ten days before the expiration date of this policy.

**CONTRACT OF SALE – OPTION 3**
Any loss shall be adjusted with "you" and shall be payable to "you" and the loss payee shown on the schedule as "your" and their interests appear.

The loss payee shown on the schedule is a person or organization "you" have entered a contract with for the sale of covered property.

When covered property is the subject of a contract of sale, the word "you" also means the loss payee.

Copyright MCMXCV, American Association of Insurance Services

This endorsement changes the policy.
- PLEASE READ THIS CAREFULLY -

# AMENDATORY ENDORSEMENT
## ILLINOIS

1. Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

**Cancellation –**

a. "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

b. "We" may cancel this policy by mailing "our" written notice of cancellation to "you" and any mortgagee or lienholder at the last mailing address known to "us". "Our" notice will include the reason or reasons for cancellation. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

c. During the first 60 days this policy is in effect, "we" may cancel this policy for any reason. If "we" cancel for any reason other than those listed in d. or e. below, "we" will mail the notice of cancellation 30 days before the effective date of cancellation.

d. For policies not issued to cover one- to four-family dwellings, "we" may cancel this policy at any time during the policy period, if the insured property consists of one or more buildings:

   1) to which, following a fire loss, permanent repairs have not commenced within 60 days after satisfactory adjustment of loss, unless such delay is a direct result of a labor dispute or weather conditions;

   2) that have been unoccupied 60 consecutive days, except buildings which have a seasonal occupancy and buildings which are undergoing construction, repair, or reconstruction and are properly secured against unauthorized entry;

   3) for which, because of their physical condition, there is an outstanding demolition order, or which have been declared unsafe in accordance with applicable law; or

   4) to which heat, water, sewer service, or public lighting have not been connected for 30 consecutive days or more.

If "we" cancel this policy for reasons listed under d.1) through d.4) above, cancellation will be effective ten days after "you" and any mortgagee or lienholder have received "our" notice. The notice of cancellation will be sent by regular mail and certified mail, and "your" return premium, if any, will be calculated on a pro rata basis.

e. "We" may cancel this policy at any time during the policy period if the premium has not been paid when due. If "we" cancel this policy for non-payment of premium, "we" will mail the cancellation notice at least ten days before the effective date of cancellation.

f. If this policy has been in effect for more than 60 days, or if it is a renewal of a policy issued by "us", "we" may cancel this policy according to the "terms" set forth under item d. or item e. above, or "we" may cancel if one or more of the following reasons apply:

   1) If this policy covers one- to four- family dwellings used for residential purposes or any personal property incidental to residential occupancies, "we" may cancel this coverage when:

      a) the policy was obtained by misrepresentation or fraud; or

      b) there has been an act that measurably increases the risk originally accepted.

BP 0419 04 03       Includes copyrighted material from AAIS, used with their permission, 2002       AAIS

2) If this policy covers any other type of property, "we" may cancel this coverage when:

a) the policy was obtained through a material misrepresentation;

b) any "insured" has violated any of the "terms" and conditions of the policy;

c) the risk originally accepted has measurably increased;

d) certification of the Director of the loss of reinsurance by the insurer which provided coverage to "us" for all or a substantial part of the underlying risk insured; or

e) a determination by the Director that the continuation of the policy could place "us" in violation of the insurance laws of this state.

If "we" cancel this policy for any of the reasons listed under f.1) or f.2) above, "we" will mail the cancellation notice at least 60 days before the effective date of cancellation.

g. "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

2. Under Common Policy Conditions, the following condition is added:

**Nonrenewal** – If "we" decide not to renew this policy, "we" will mail "our" notice of nonrenewal to "you" at least 60 days before the end of the policy period or anniversary date. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record and any mortgagee or lienholder at the last mailing address known to "us". Proof of mailing is sufficient proof of notice. "Our" notice will include the reason for nonrenewal.

3. Under Common Policy Conditions, the following condition is added:

**Renewal** – If "we" decide to renew this policy with premium increases of 30% or higher, or impose changes in deductible or coverage that materially alter the policy, "we" will mail or deliver to "you" written notice of such increase or change in deductible or coverage at least 60 days before the renewal or anniversary date. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice. Notification because of premium increase is not necessary where increases exceeding 30% are due to changed conditions or increased or broadened coverage.

4. Under the Common Policy Conditions, Misrepresentation, Concealment, or Fraud is deleted and replaced by the following:

**Misrepresentation, Concealment, or Fraud** – "We" do not provide coverage for an "insured" who has:

a. willfully concealed or misrepresented:

1) a material fact or circumstance with respect to this insurance; or

2) an "insured's" interest herein; or

b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

For policies covering one- to four-family dwelling used principally for residential purposes, this condition does not apply to statements made on the application for coverage after the first renewal of the policy is issued, or after the first annual anniversary of the policy's original inception date.

The following provisions amend the Property Coverages:

5. Under Other Property Coverage Conditions, Appraisal is amended to include the following:

If "you" request an appraisal and the full amount of the appraised loss is upheld by an agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

BP 0419 04 03    Includes copyrighted material from AAIS, used with their permission, 2002    AAIS

6. Under Other Property Coverage Conditions, Suit Against Us is amended to include the following:

However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

7. Under Additional Exclusions, Criminal, Fraudulent, or Dishonest Acts is amended to include the following:

However, if the loss is caused by an act of domestic violence committed by or at the direction of an "insured" that:

a. arose out of a pattern of criminal domestic violence; and

b. the perpetrator of the loss is criminally prosecuted for the act causing the loss;

this exclusion will not apply to an otherwise covered loss suffered by another "insured" who did not cooperate in or contribute to the act that caused the loss.

"Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

The following provisions amend the Liability Coverages:

8. Under Exclusions, Additional Exclusions That Apply Only to Personal And/Or Advertising Injury, the exclusion relating to "pollutants" is deleted and replaced by the following:

"We" do not pay for:

a. "personal or advertising injury" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time unless the "personal or advertising injury" arises from the heat, smoke, or fumes of a "hostile fire"; or

b. any loss, cost, or expense arising out of any:

1) request, demand, or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or

2) claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "pollutants".

Pollutants means:

a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be disposed of as well as recycled, reclaimed, or reconditioned.

b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

BP 0419 04 03    Includes copyrighted material from AAIS, used with their permission, 2002    AAIS

Amendment of the policy

- PLEASE READ THIS CAREFULLY -

# CERTIFIED TERRORISM LOSS

The Businessowners Policy is amended as follows:

1. The following definitions are added.

    a. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

        1) to be an act of terrorism;

        2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;

        3) to have resulted in damage:

            a) within the United States; or

            b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission; and

        4) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

    No act will be certified by the Secretary of the Treasury as an act of terrorism if the act is committed as part of the course of a war declared by the Congress (except with respect to any coverage for workers' compensation) or if property and casualty insurance losses resulting from the act do not exceed $5,000,000 in the aggregate.

    b. "Certified terrorism loss" means loss that results from a "certified act of terrorism".

2. The "terms" of any terrorism exclusion that is part of or that is attached to this policy are amended by the following provision:

    This exclusion does not apply to "certified terrorism loss".

3. The following provision is added:

    If the Secretary of the Treasury determines that the amount of "certified terrorism loss" has exceeded the maximum annual liability as set forth by the Federal Terrorism Risk Insurance Act of 2002 or any amendments thereto, "we" will not pay for any portion of "certified terrorism loss" that exceeds the maximum annual liability.

4. Under Property Coverages, the following provisions are added.

    a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the Property Coverages section of this policy provide coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

        1) exclusions that address war, military action, or nuclear hazard; or

        2) any other exclusion; and

    b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

        1) exclusions that address war, military action, or nuclear hazard; or

        2) any other exclusion.

BP 0750 05 03     Copyright, American Association of Insurance Services, Inc., 2003

# BUSINESSOWNERS SPECIAL POLICY
## TABLE OF CONTENTS

| | PAGE |
|---|---|
| Agreement | 1 |
| Common Policy Conditions | 2 |
| **PROPERTY COVERAGE SECTION** | 3 |
| Definitions | 3 |
| Property Covered | 4 |
| Coverage A – Buildings | 4 |
| Coverage B – Business Personal Property | 4 |
| Property Not Covered | 5 |
| Additional Property Excluded and Limitations | 5 |
| Additional Property Coverages | 6 |
| Extensions Of Coverage | 11 |
| Coverage C – Loss Of Income | 14 |
| Earnings | 14 |
| Extra Expenses | 14 |
| Exclusions And Limitations | 14 |
| Supplemental Loss Of Income Coverages | 15 |
| Perils Covered | 16 |
| Perils Excluded | 16 |
| Additional Exclusions | 18 |
| What Must Be Done In Case Of Loss | 20 |
| Valuation Of Property Losses | 20 |
| How Much We Pay | 22 |
| Loss Payment | 23 |
| Other Property Conditions | 23 |
| Optional Property Coverages | 25 |
| **COMMERCIAL LIABILITY COVERAGE SECTION** | 27 |
| Definitions | 27 |
| Principal Coverages | 31 |
| Coverage L – Bodily Injury Liability/Property Damage Liability | 31 |
| Coverage M – Medical Payments | 31 |
| Coverage N – Products/Completed Work | 31 |
| Coverage O – Fire Legal Liability | 31 |
| Coverage P – Personal And Advertising Injury Liability | 31 |
| Supplemental Coverages | 32 |
| Defense Coverage | 33 |
| Exclusions | 34 |
| Additional Exclusions That Apply To Personal And Advertising Injury Liability | 37 |
| Additional Exclusions That Apply Only To Property Damage Liability | 38 |
| Additional Exclusions That Apply Only To Medical Payments | 39 |
| What Must Be Done In Case Of Loss | 39 |
| How Much We Pay | 40 |
| Conditions | 41 |
| Nuclear Energy Liability Exclusion | 42 |
| Nuclear Energy Liability Exclusion Definitions | 43 |

Endorsements may also apply. They are identified on the "declarations" page. Refer to the Definitions for words that have special meanings. These words are shown in quotation marks or bold type.

## AGREEMENT

Subject to all the "terms" that apply, and in return for "your" payment of the required premium, "we" provide the coverages described in this policy during the policy period.

# COMMON POLICY CONDITIONS

This Common Policy Conditions Section contains additional "terms" that apply to all coverages provided by this policy.

1. **Assignment** - This policy may not be assigned without "our" written consent.

2. **Cancellation** - "You" may cancel this policy by returning the policy to "us" or by giving "us" a written notice and stating at what future date coverage is to stop.

   "We" may cancel this policy, or one or more of its parts, by written notice sent to "you" at "your" last mailing address known to "us". If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

   If "we" cancel this policy for nonpayment of premium, "we" will give "you" notice at least ten days before the cancellation is effective. If "we" cancel this policy for any other reason, "we" will give "you" notice at least 30 days before the cancellation is effective. The notice will state the time that the cancellation is to take effect.

   "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification, or Waiver of Policy Terms** - A change or waiver of "terms" of this policy must be issued by "us" in writing to be valid.

4. **Conformity With Statute** - "Terms" of this policy, in conflict with the statutes of the state where the premises described are located, are amended to conform to such statutes.

5. **Cooperation** - In case of loss, "you" must cooperate in performing all acts required by this policy.

6. **Examination of Books and Records** - "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

7. **Inspections** - "We" have the right, but are not obligated, to inspect "your" property and operations at any time. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report does not warrant that "your" property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspections or reports are for "our" benefit only.

8. **Liberalization** - If "we" adopt a revision of forms during a policy period which broadens this policy without additional premium, the broadened coverage will automatically apply to this policy. This also applies if "we" adopt the revision within 60 days before this policy is effective.

9. **Misrepresentation, Concealment, or Fraud** - This coverage is void as to "you" and any other "insured" if, before or after a loss:

   a. "you" have or any other "insured" has willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or

      2) the "insured's" interest herein; or

   b. there has been fraud or false swearing by "you" or any other "insured" with regard to a matter that relates to this insurance or the subject thereof.

10. **Additional Premium Due After Expiration** – If the premium for coverage provided by this policy is based upon an audit of exposures or reports of value and the final premium is determined after the expiration of the policy, any additional premium owed to "us" is due on the due date that appears on the billing notice.

# PROPERTY COVERAGES

This Property Coverage Section contains the definitions, coverage descriptions, perils, exclusions, limitations, and conditions that apply to Businessowners Property Coverages.

## DEFINITIONS

1. "You" and "your" mean the persons or organizations named as the insured on the "declarations".

2. "We", "us", and "our" mean the company providing this coverage.

3. "Basic territory" means the United States of America, its territories and possessions, Canada, and Puerto Rico.

4. "Computer" means:

   a. programmable electronic equipment that is used to store, retrieve, and process data; and

   b. associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

   "Computer" does not include those used to operate production type machinery or equipment.

5. "Counterfeit" means an imitation of an actual invalid original which is intended to deceive and to be taken as the original.

6. "Declarations" means all pages labeled declarations, supplemental declarations, or schedules, which pertain to this policy.

7. "Electronic media and records" means the following, if owned by "you" or licensed to "you" and used in "your" business:

   a. media, meaning disks, tapes, film, drums, cells, or other media which are used with electronically controlled equipment.

   b. data, meaning information or facts stored on media described in Paragraph a. above. Data includes "valuable papers and records" converted to data.

   c. "computer" program, meaning a set of related electronic instructions which direct the operations and functions of a "computer" or a device connected to it, which enable the "computer" or device to receive, process, restore, retrieve, or send data.

d. software, including systems and applications software.

8. "Fungi" means any type or form of fungus, including mold or mildew, and mycotoxins, spores, scents, or by-products produced by fungi.

9. "Limit" means the amount of coverage that applies.

10. "Money" means currency, coins, bank notes in current use; and traveler's checks and money orders held for sale.

11. "Pollutant" means:

   a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be disposed of as well as recycled, reclaimed, or reconditioned.

   b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

12. "Restoration period" means the time it should reasonably take to resume "your" normal business activities at the described premises starting from the date of loss caused by a covered peril, and ending on the date the property should be rebuilt, repaired, or replaced. This is not limited by the expiration date of the policy.

   This does not include any increase in time due to the enforcement of any ordinance, law, or decree that regulates or requires:

   a. the construction, use, repair, or demolition of any property;

   b. the testing, evaluating, observing, or recording the existence, level, or effects of "pollutants"; or

   c. the clean up, removal, containment, treatment, detoxification, or neutralization of "pollutants".

13. "Securities" means negotiable and nonnegotiable instruments representing either "money" or other property. This includes tokens, tickets, revenue, or other stamps in current use, and evidences of debt used in connection with credit cards, but does not include "money".

14. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

15. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm, all except as excluded or limited.

Falling objects does not include loss to personal property in the open or to the interior of buildings or structures or personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object.

Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

16. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

17. "Valuable papers and records" means:

    a. inscribed, printed, or written:

        1) documents;

        2) manuscripts; and

        3) records;

        including, but not limited to, abstracts, books, deeds, drawings, films, maps, or mortgages; and

    b. "electronic media and records".

    But "valuable papers and records" does not mean "money" and "securities".

18. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow. It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

"We" cover direct physical loss to property covered under COVERAGE A and COVERAGE B caused by a covered peril.

### COVERAGE A - BUILDINGS

This means buildings and structures for which a "limit" is shown on the "declarations". This includes:

1. completed additions;

2. fixtures, machinery, and equipment which are a permanent part of the described building or structure;

3. outdoor fixtures;

4. personal property owned by "you" and used to maintain or service the described premises, including air-conditioning equipment; fire extinguishing apparatus; outdoor furniture; floor coverings; and appliances for refrigerating, cooking, dish washing, and laundering;

5. if not covered by other insurance:

    a. additions under construction, alterations, and repairs to the building or structure; and

    b. materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations, or repairs to the building or structure; and

6. "your" personal property in apartments, rooms or common areas furnished by "you" as landlord.

### COVERAGE B - BUSINESS PERSONAL PROPERTY

This means "your" business personal property in the buildings and structures described on the "declarations" or in the open (or in vehicles) on or within 100 feet of the described premises and for which a "limit" is shown on the "declarations". This includes:

1. "your" interest in personal property of others in "your" care, custody, or control, to the extent of "your" legal liability, plus the cost of "your" labor, material, and services;

2. "your" use interest as tenant in improvements to the described building or structure. Improvements are fixtures, alterations, installations, or additions:

    a. to a building or structure "you" occupy but do not own; and

    b. made or acquired at "your" expense and which cannot be legally removed by "you";

3. leased personal property for which "you" have a contractual responsibility to insure, unless otherwise provided for under Paragraph 1; and

4. exterior building glass, if "you" are a tenant and no "limit" is shown in the "declarations" for building property. The glass must be owned by "you" or in "your" care, custody, or control.

## PROPERTY NOT COVERED

The property described below is not covered under Coverage A - Buildings or Coverage B - Business Personal Property. Limited coverage for some of the property described below is included under Additional Property Coverages or Extensions Of Coverage.

1. **Accounts Receivable or Valuable Papers and Records** - Except as provided under Extensions Of Coverage, "we" do not cover accounts, bills, food stamps, other evidences of debt, accounts receivable, or "valuable papers and records".

2. **Antennas, Fences, and Signs** - Except as provided under Additional Property Coverages, "we" do not cover outdoor:

   a. radio, television, satellite, dish-type, or other antennas or their masts, towers, or lead-in wiring;

   b. fences; or

   c. signs (other than signs attached to buildings).

3. **Bullion** - "We" do not cover bullion.

4. **Computers** – Except as provided under Extensions Of Coverage, "we" do not cover "computers", including those which are permanently installed in any aircraft, watercraft, or vehicles required to be licensed for use on public roads. This paragraph does not apply to "computer"(s) while held as stock.

5. **Contraband** - "We" do not cover contraband or property in the course of illegal transportation or trade.

6. **Cost of Excavation, Grading, or Filling, Paved Surfaces or Underground Pipes, Flues, or Drains** – "We" do not cover:

   a. cost of excavations, grading, or filling;

   b. paved outdoor surfaces, including driveways, parking lots, roads, and walks; or

   c. underground pipes, flues, and drains.

7. **Land, Water, Growing Crops, or Lawns** - "We" do not cover:

   a. land, including land on which the property is located;

   b. underground or surface water; or

   c. growing crops or lawns.

8. **Lottery Tickets** - "We" do not cover lottery tickets not held for sale.

9. **Money and Securities** – Except as provided under the Additional Property Coverages, "we" do not cover lottery tickets not held for sale, "money", or "securities".

10. **Trees, Shrubs, and Plants** - Except as provided under Extensions of Coverage, "we" do not cover:

    a. trees, shrubs, or plants, except those held for sale; or

    b. grain, hay, straw, or other crops, when outdoors.

11. **Vehicles and Aircraft** - "We" do not cover aircraft or vehicles or self-propelled machines required to be licensed for use on public roads.

12. **Watercraft** - "We" do not cover watercraft (including their motors, equipment, or accessories) while afloat.

## ADDITIONAL PROPERTY EXCLUDED AND LIMITATIONS

The exclusions and limitations described below apply to Coverage A and Coverage B.

1. **Animals** – "We" do not cover loss to animals, including birds and fish, except death or destruction of animals held for sale caused by "specified perils" or breakage of glass.

2. **Boilers** - "We" do not cover loss to steam boilers, steam pipes, steam turbines, or steam engines caused by any condition or occurrence within such equipment. "We" do cover loss to such equipment caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

   "We" do not cover loss to hot water boilers or water heaters caused by any condition or occurrence within such equipment other than explosion.

3. **Furs** - "We" do not cover more than $2,500 total in any one occurrence for loss by theft of furs or fur garments.

4. **Glassware/Fragile Articles** - "We" do not cover breakage of fragile articles such as glassware, statuary, porcelains, and bric-a-brac, except as a result of a "specified peril". This does not apply to glass that is a part of the exterior or interior of a building or structure; bottles or other containers held for sale; or lenses of photographic or scientific instruments.

5. **Interior of Buildings** – "We" do not cover loss or damage to the interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand, or dust, unless:

   a. entering through openings made by a covered peril through which the rain, snow, sleet, ice, sand, or dust enters; or

   b. the loss or damage is caused by the thawing of snow, sleet, or ice on the building or structure.

6. **Jewelry, Watches, Jewels, Pearls, Precious Stones, and Metals** - "We" do not cover more than $2,500 total in any one occurrence for loss by theft of jewelry; watches; watch movements; jewels; pearls; precious, or semi-precious stones; gold, silver, or other precious metals; or items consisting primarily of precious metals. This limitation does not apply to jewelry or watches worth $100 or less per item.

7. **Missing Property** - "We" do not cover missing property when the only proof of loss is unexplained or mysterious disappearance, shortage discovered on taking inventory, or other instance where there is no physical evidence to show what happened to the property.

8. **Patterns, Dies, Molds, Models, and Forms** - "We" do not cover more than $2,500 total in any one occurrence for loss by theft of patterns, dies, molds, models, or forms.

9. **Personal Property in the Open** - "We" do not cover loss to personal property in the open caused by rain, snow, ice, or sleet.

10. **Transferred Property** – "We" do not cover loss to property that has been transferred to a person or to a place away from the described premises on the basis of unauthorized instructions.

11. **Trees, Plants, and Shrubs Held For Sale** – "We" do not cover loss or damage to trees, plants, and shrubs held for sale caused by or resulting from vehicles.

## ADDITIONAL PROPERTY COVERAGES

"We" provide the following additional property coverages.

Unless otherwise stated, each additional coverage is an additional amount of insurance.

1. **Collapse**

   a. As Collapse pertains to a building:

      1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building cannot be occupied for its intended purpose.

      2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

      3) A part of the building that is standing is not considered to be in a state of collapse even if it has separated from another building.

      4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage, or expansion.

   b. "We" pay for loss caused by direct physical loss involving collapse of a building or structure or any part of a building or structure covered by this policy caused only by one or more of the following:

      1) a "specified peril" or breakage of building glass, all only as covered in the Property Coverages;

      2) hidden decay, unless the presence of such damage is known to an "insured" prior to collapse;

      3) hidden insect or vermin damage, unless the presence of such damage is known to an "insured" prior to collapse;

      4) weight of people or business personal property;

creased Costs - **Ordinance or Law** - "We" pay the increased costs of a covered loss, including debris removal expense, resulting from the enforcement of any ordinance, law, or decree that regulates or requires:

a. the construction or repair of a building or structure, or establishes building, zoning, or land use requirements on the described premises; or

b. the demolition of undamaged parts of covered buildings or structures that are damaged or destroyed by a covered peril.

The ordinance, law, or decree must be in force at the time of loss. The buildings must be covered on a replacement cost basis.

"We" do not pay for:

a. any costs due to an ordinance or law "you" were required to comply with before the loss, but failed to do so.

b. the enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling, or remediation of property due to contamination by "pollutants" or due to the presence growth, proliferation, spread or any activity of "fungus", wet or dry rot, or bacteria; or

c. any costs associated with the enforcement of an ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot, or bacteria.

"We" do not pay under this Additional Property Coverage:

a. until the property is actually repaired or replaced at the same or another location; and

b. unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. "We" may extend this period in writing during the two years.

If "you" elect to rebuild at another location, the most "we" pay for this Additional Property Coverage is the increased cost of construction that "we" would have paid to rebuild at the same location.

If the ordinance or law requires relocation to another location, the most "we" pay for the increased cost of construction is the increased cost of construction at the new location.

The most "we" pay for this Additional Property Coverage is $10,000 for each described building.

Under Perils Excluded, Ordinance or Law does not apply to this Additional Property Coverage.

This is an additional amount of insurance.

5. **Pollutant Clean Up and Removal** - "We" pay "your" expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

"We" pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants" only when the expense of extracting the "pollutants" is covered by this Additional Property Coverage.

The most "we" pay for each described premises is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs or the end of the policy period.

6. **Removal** - "We" pay for loss to covered property while it is moved, being moved, or temporarily in storage to prevent a loss caused by a covered peril. "We" will pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to 30 days after the property is first moved.

This does not increase the "limit" for the covered property.

7. **Tearing Out and Replacing** - When loss caused by:

a. water;

b. other liquids;

c. powder; or

d. molten material

is covered, "we" also pay the cost of tearing out and replacing any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

"We" do not pay for damage to the system or appliance from which the water or other substance escapes. However, "we" pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

This does not increase the "limit" for the covered property.

8. **Antennas, Fences, and Signs** - "We" pay up to $2,500 for loss to "your" outdoor:

   a. radio, television, satellite, dish-type, or other antennas including their masts, towers, and lead-in wiring;

   b. fences; or

   c. signs (other than signs attached to buildings),

   caused by a covered peril. However, loss to fences is covered only for the perils of aircraft, civil commotion, explosion, fire, lightning, or riot.

9. **Glass Expenses** – "We" pay for "your" expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

   "We" pay for "your" expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

10. **Fire Extinguisher Systems Recharge Expense** – "We" pay:

    a. the cost of recharging or replacing, whichever is less, "your" fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

    b. for loss or damage to covered property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

    No coverage will apply if the fire extinguishing system is discharged during installation or testing.

    The most "we" will pay under this Additional Property Coverage is $5,000 for any one occurrence.

11. **Forgery or Alterations** – "We" pay up to $2,500, unless a higher "limit" is shown in the "declarations", for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange, or similar written promise of payment in "money", that "you" or "your" agent has issued, or that was issued by someone who impersonates "you" or "your" agent. The "limit" includes legal expenses.

    If "you" are sued for refusing to pay the check, draft, promissory note, bill of exchange, or similar written promise of payment in "money", on the basis that it has been forged or altered, and "you" have "our" written consent to defend against the "suit", "we" will pay for any reasonable legal expenses that "you" incur in that defense.

12. **Money Orders And Counterfeit Paper Currency** – "We" pay up to $1,000 for loss resulting directly from "your" having accepted in good faith, in exchange for merchandise, "money", or services:

    a. money orders issued by any post office, express company, or bank that are not paid upon presentation; or

    b. "counterfeit" paper currency that is acquired during the regular course of business.

13. **Money and Securities**

    a. "We" cover "money" and "securities", bullion, and lottery tickets that "you" own, hold, or for which "you" are legally liable, for direct loss or damage resulting from:

       1) theft, meaning any act of stealing, including burglary and robbery;

       2) disappearance; or

       3) destruction.

    b. Perils Covered do not apply to this Additional Property Coverage.

       Under Perils Excluded, only the following excluded perils apply to this Additional Property Coverage:

       1. Civil Authority;

       3. Earth Movement or Volcanic Eruption;

       4. Nuclear Hazard; and

       8. War.

Under Additional Exclusions, only the following exclusions apply to this Additional Property Coverage:

4. Criminal, Fraudulent, or Dishonest Acts; or

21. Voluntary Parting.

In addition to the above exclusions, "we" do not pay for loss or damage:

1) resulting from accounting or arithmetical errors or omissions;

2) from a "money" operated device unless the "money" deposited is recorded by a continuous recording instrument in the device;

3) from an unattended vehicle, unless the loss results from forced entry of a securely locked compartment. There must be visible evidence that the entry was forced; or

4) due to the giving or surrendering of property in any exchange or purchase.

c. Under How Much We Pay, 6. Automatic Increase, and 7. Seasonal Increase do not apply to this coverage.

d. Unless a higher limit is shown on the "declarations", the most "we" will pay for any one occurrence is:

1) $10,000 for loss occurring inside or on the premises or within a bank or savings institution; or

2) $2,000 for loss at any other location.

These "limits" apply to an act or a series of related acts involving one or more persons.

e. "You" must keep records of property covered so that "we" can verify the amount of loss.

14. **Limited Coverage for "Fungus", Wet Or Dry Rot, Or Bacteria**

a. The coverage described in Paragraphs 14.b. and 14.f. only applies when "fungus", wet or dry rot, or bacteria are the result of a "specified peril" other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

b. "We" will pay for damage by "fungus", wet or dry rot, or bacteria. As used in this Limited Coverage, loss or damage means:

1) direct physical loss or damage to covered property caused by "fungus", wet or dry rot, or bacteria, including the cost of removal of "fungus", wet or dry rot, or bacteria;

2) the cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot, or bacteria; and

3) the cost of testing performed after removal, repair, replacement, or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot, or bacteria are present.

c. The coverage described under this Limited Coverage is limited to $15,000. Regardless of the number of claims, this "limit" is the most "we" will pay for the total of all loss or damage arising out of all occurrences of "specified perils" (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot, or bacteria, "we" will not pay more than the total of $15,000 even if the "fungus", wet or dry rot, or bacteria continues to be present or active, or recurs, in a later policy period.

d. The coverage provided under this Limited Coverage does not increase the applicable limit of insurance on any covered property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot, or bacteria, and other loss or damage, "we" will not pay more, for the total of all loss or damage, than the applicable limit of insurance on the affected covered property.

If there is covered loss or damage to covered property, not caused by "fungus", wet or dry rot, or bacteria, loss payment will not be limited by the "terms" of this Limited Coverage, except to the extent that "fungus", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the "terms" of this Limited Coverage.

e. The "terms" of this Limited Coverage do not increase or reduce the coverage provided under the Tearing Out and Replacing Additional Property Coverage.

f. The following applies only if Coverage C – Earnings and Extra Expense applies to the described premises and only if the interruption of "your" business satisfies all of the "terms" of the applicable Earnings and Extra Expense Coverage.

   1) If the loss which resulted in "fungus", wet or dry rot, or bacteria does not in itself necessitate an interruption of "your" business, but the interruption is necessary due to loss or damage to property caused by "fungus", wet or dry rot, or bacteria, then "our" payment under the Coverage C – Earnings and Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   2) If a covered interruption of "your" business was caused by loss or damage other than "fungus", wet or dry rot, or bacteria, but remediation of "fungus", wet or dry rot, or bacteria prolongs the time needed to resume "your" normal business operation, "we" will pay for loss and/or expense sustained during the delay (regardless of when such delay occurs during the time needed to resume "your" normal business operation), but such coverage is limited to 30 days. The days need not be consecutive.

## EXTENSIONS OF COVERAGE

Unless otherwise stated, each extension of coverage is an additional amount of insurance which applies to losses at the described premises caused by a covered peril.

"We" provide the following extensions of Coverage A - Buildings.

1. **Building Property - Off Premises** - "We" pay up to $5,000 for loss to covered property while temporarily at locations that "you" do not own, control, rent, or lease.

   This coverage includes property while in transit. "We" only cover loss at such locations within the "basic territory". "We" do not cover theft loss from unattended vehicles unless the loss results from forced entry of a securely locked compartment. There must be visible evidence that the entry was forced.

2. **Newly Acquired Buildings** - "We" pay up to 25% of the "limit" shown on the "declarations" for Building Property, but not exceeding $250,000, for loss to each building or structure being built or that "you" acquire during the policy period. "We" only cover loss at such locations within the "basic territory".

   This coverage applies for 30 days after construction is started or for 30 days from the date "you" acquire the building or structure or until "you" report the newly acquired property to "us", whichever occurs first. This coverage does not extend beyond the end of the policy period.

   "You" must pay any additional premium due from the date construction is started or the date "you" acquire the property.

3. **Trees, Shrubs, and Plants** - "We" pay up to $1,500 for loss to "your" outdoor trees, shrubs, and plants, except for those held for sale. "We" only cover loss caused by aircraft, civil commotion, explosion, fire, lightning, or riot. This coverage is limited to $500 for any one tree, shrub, or plant, including debris removal.

"We" provide the following extensions of Coverage B - Business Personal Property.

1. **Personal Effects** - "We" pay up to $2,500, at each described premises, for loss to personal effects owned by "you", "your" officers, "your" partners or members, "your" managers, or "your" employees. This coverage is limited to $100 for property owned by any one person.

2. **Personal Property - Acquired Locations** -"We" pay up to $100,000 for loss to Business Personal Property at each location "you" acquire. "We" only cover loss at such locations within the "basic territory". "We" do not cover personal property at fairs or exhibitions.

   This coverage applies for 30 days from the date "you" acquire the location or until "you" report the acquired location to "us", whichever occurs first. This coverage does not extend beyond the end of the policy period.

   "You" must pay any additional premium due from the date "you" acquire the location.

   This Extension does not apply to personal property that "you" temporarily acquire in the course of installing or performing work on such property or "your" wholesale activities.

3. **Personal Property - Off Premises** - "We" pay up to $5,000 for loss to covered personal property, other than "money" and "securities", "valuable papers and records", "computers", or accounts receivable, while temporarily at locations that "you" do not own, control, rent, or lease. "We" only cover loss at such locations within the "basic territory". "We" do not cover personal property at fairs or exhibitions. This coverage includes property while in transit. "We" do not cover theft loss from unattended vehicles unless the loss results from forced entry of a securely locked compartment. There must be visible evidence that the entry was forced.

4. **Personal Property of Others** - "We" pay up to $10,000, at each described premises, for loss to personal property of others in "your" care, custody, or control. This coverage is only for the benefit of the owners of the personal property.

5. **Valuable Papers and Records** - "We" pay up to $10,000, unless a higher "limit" is shown in the "declarations", at each described premises for direct physical loss to "valuable papers and records" that "you" own or that are in "your" care, custody or control caused by a covered peril. This coverage includes the cost to research, replace or restore the lost information on "valuable papers and records" for which duplicates do not exist.

For "valuable papers and records" not at the described premises, the most "we" will pay is $5,000.

"We" do not cover:

a. property held as samples for sales or delivery after sale.

b. property that is in storage at locations other than the described premises.

Under Perils Excluded, only the following excluded perils apply to this coverage:

1. Civil Authority;

4. Nuclear Hazard;

8. War; and

10. Weather.

Under Additional Exclusions, only the following exclusions apply to this coverage:

4. Criminal, Fraudulent, or Dishonest Acts;

5. Defects, Errors, and Omissions; or

21. Voluntary Parting.

6. **Accounts Receivable** – "We" will pay up to $10,000, unless a higher "limit" is shown in the "declarations", to cover losses and expenses that "you" incur as a result of loss or damage to "your" records of accounts receivable caused by a covered peril at each described premises. Losses and expenses under accounts receivable coverage means:

a. all sums due from "your" customers that "you" are unable to collect;

b. interest charges on any loan required to offset amounts "you" are unable to collect pending "our" payment of these amounts;

c. collection expenses in excess of "your" normal collection expenses that are made necessary because of loss or damage; and

d. other reasonable expenses incurred by "you" in recreating "your" accounts receivable records following such loss or damage.

For accounts receivable coverage not at the described premises, the most "we" will pay is $5,000.

Under Perils Excluded, only the following excluded perils apply to this coverage:

1. Civil Authority;

4. Nuclear Hazard;

8. War; and

10. Weather.

Under Additional Exclusions, only the following exclusions apply to this coverage:

4. Criminal, Fraudulent, or Dishonest Acts;

5. Defects, Errors, and Omissions; or

21. Voluntary Parting.

In addition to the above exclusions, "we" do not pay for loss or damage:

a. caused by the destruction, alteration, falsification, or concealment of "your" accounts receivable records that is done to conceal the crime, fraudulent, dishonest, or illegal giving, taking, or withholding of "money", "securities", or other property.

b. that results from a discrepancy that is discovered in "your" books or records if this is the only means to prove that a loss has occurred. "You" may use the discrepancy to support "your" claim.

c. caused by bookkeeping, accounting, or billing errors or omissions.

d. that results from electrical or magnetic damage, disturbance, or erasure of "electronic media and records" that is caused by:

1) erroneous programming or faulty equipment instructions;

2) faulty or inadequate installation or maintenance of "computer" equipment; or

3) electrical power supply disturbances including surges, blackouts, or brownouts if the cause of the disturbance took place more than 100 feet from the described premises.

7. **Computers** – "We" pay up to $25,000 in any one occurrence, unless a higher "limit" is shown in the "declarations", for direct physical loss to "your" "computers" caused by a covered peril while at a premises described in the "declarations". This includes property of others that is in "your" care, custody, or control.

For "your" "computers" in transit or not on the described premises, "we" will pay up to $2,500 in any one occurrence.

"We" do not cover:

a. property held as samples for sales or delivery after sale.

b. property that "you" own, lease, or rent to others.

c. "computers" that are installed or designed to be installed in any aircraft, watercraft, or vehicles required to be licensed for use on public roads.

d. "your" stock in trade.

Under Perils Excluded, only the following excluded perils apply to this coverage:

1. Civil Authority;

2. Certain Computer Related Losses;

4. Nuclear Hazard;

7. Water;

8. War; and

9. Fungi, Wet Rot, Dry Rot, or Bacteria.

Under Additional Exclusions, only the following exclusions apply to this coverage:

3. Contamination or Deterioration;

4. Criminal, Fraudulent, or Dishonest Acts;

6. Electrical Currents;

8. Errors or Omissions;

11. Installation, Testing, Repair;

12. Loss of Use;

14. Mechanical Breakdown;

15. Pollutants;

20. Temperature/Humidity;

22. Wear and Tear.

In addition to the above exclusions, "we" do not pay for loss:

a. caused by a covered peril for which "you" are not responsible under the terms of any lease or agreement.

b. caused by or resulting from business interruption.

c. caused by depreciation or obsolescence.

## COVERAGE C – LOSS OF INCOME

"We" provide the coverages shown below during the "restoration period" when "your" normal business activities are necessarily interrupted by direct physical loss to real or personal property as a result of a covered peril during the policy period. This coverage applies only when the loss to real or personal property is at the described premises or in the open (or in vehicles) within 100 feet thereof.

With respect to the requirement set forth in the preceding paragraph, if "you" occupy only part of the site at which the described premises are located, "your" premises means:

1.  the portion of the building which "you" rent, lease, or occupy, and

2.  any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to the described premises.

"We" will pay only the loss of earnings and extra expenses incurred within 12 consecutive months after the date of direct physical loss or damage to property. When a "limit" of insurance for Coverage C is shown on the "declarations", "we" will not pay more for earnings and extra expenses combined than the Coverage C "limit".

### EARNINGS

"We" cover "your" actual loss of net income (net profit or loss before income taxes), payroll expense, interest, and other continuing operating expenses normally incurred and earned by "your" business. "We" will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the "declarations". Ordinary payroll expenses mean payroll expenses for your employees except officers, executives, department managers, employees under contract, and, if shown in the "declarations", any exceptions. It does include payroll, employee benefits (if directly related to payroll), FICA payments "you" pay, union dues "you" pay, and workers' compensation premiums.

"We" cover only the expenses that are necessary during the "restoration period". Consideration is given to continuation of expenses, other than payroll, to the extent necessary to resume "your" normal business activities with the same quality of service that existed before the loss.

"We" do not pay for any increase in loss due to "your" failure to use reasonable efforts to resume all or part of "your" normal business activities. This includes making use of other locations and property to reduce the loss.

If "your" normal business activities are not resumed as soon as possible, or if they are not resumed at all, the value of loss payment is based on the period of time it would have otherwise taken to resume "your" normal business activities as soon as possible.

In determining a loss, "we" consider the experience of "your" business before the loss and the probable experience had no loss occurred.

### EXTRA EXPENSE

"We" cover the necessary extra expenses that "you" incur to resume or continue "your" normal business activities as nearly as practicable.

"We" cover only the extra expenses that are necessary during the "restoration period".

"We" cover extra expenses to repair, replace, or restore any property, but only to the extent that they reduce the loss otherwise payable under this coverage.

"We" cover extra expenses to research, replace, or restore information on damaged "valuable papers and records", but only to the extent that they reduce the loss otherwise payable under this coverage.

"We" do not pay for any increase in loss due to "your" failure to use reasonable efforts to resume all or part of "your" normal business activities. This includes making use of other locations and property to reduce the loss.

If "your" normal business activities are not resumed as soon as possible, or if they are not resumed at all, the value of loss payment is based on the period of time it would have otherwise taken to resume "your" normal business activities as soon as possible.

The salvage value of any property bought for temporary use shall be deducted from the amount of loss determined for extra expense.

### EXCLUSIONS AND LIMITATIONS

The following exclusions and limitations are applicable to Coverage C - Loss of Income.

1.  **Electronic Media and Records** - "We" do not cover loss of earnings caused by damage to or loss of "electronic media and records" beyond:

    a.  60 consecutive days from the date of loss; or

b. the time from the date of loss until the date "you" could reasonably rebuild, repair, or replace other damaged property at the described premises caused by the same occurrence,

whichever is greater.

2. **Fire Extinguishment** - "We" do not cover expenses to put out a fire.

3. **Leases, Licenses, Contracts, or Orders** - "We" do not cover any increase in loss due to the suspension, lapse, or cancellation of leases, licenses, contracts, or orders.

However, "we" do cover loss during the "restoration period" if the suspension, lapse, or cancellation results directly from the interruption of "your" normal business activities.

"We" do not cover any extra expense caused by the suspension, lapse, or cancellation of leases, licenses, contracts, or orders beyond the "restoration period".

4. **Strikes, Protests, and Other Interference** - "We" do not cover any increase in loss due to interference by strikers or other persons at the described premises. This applies to interference with rebuilding, repairing, or replacing the property or with resuming "your" normal business activities.

5. **Unnecessary Expenses** - "We" do not cover any expenses that are not necessary during the "restoration period".

**SUPPLEMENTAL LOSS OF INCOME COVERAGES**

"We" provide the following extensions of Coverage C - Loss of Income.

1. **Alterations and New Buildings** - "We" extend "your" coverage to include loss caused by damage to:

a. additions or alterations;

b. new buildings or structures, completed or under construction; and

c. machinery, equipment, supplies, or building materials located on or within 100 feet of the described premises used in the construction, alterations, or additions; or incidental to the occupancy of new buildings or structures

at the described premises caused by a covered peril.

If such loss delays the start of "your" normal business activities, the "restoration period" starts from the time "your" normal business activities would have begun had no loss occurred.

This does not increase the "limit" for Coverage C - Loss of Income.

2. **Interruption by Civil Authority** - "We" extend "your" coverage to include loss while access to the described premises is specifically denied by an order of civil authority. This order must be a result of damage to property other than at the described premises and caused by a covered peril. This extension is limited to 3 consecutive weeks from the date of the order.

This does not increase the "limit" for Coverage C - Loss of Income.

3. **Newly Acquired Locations** - "We" extend "your" coverage for an amount up to $100,000 to include loss caused by damage to property at locations (other than fairs and exhibitions) "you" acquire. "We" only cover loss at such locations within the "basic territory". The damage must be caused by a covered peril.

This coverage applies for 30 days after "you" acquire the location or until "you" report the newly acquired location to "us", whichever occurs first. This coverage does not go beyond the expiration of this policy.

This is an additional amount of insurance.

4. **Period of Loss Extension** - "We" extend "your" coverage to cover loss from the date the property that incurred the loss is rebuilt, repaired, or replaced until:

a. the end of 30 consecutive days (unless otherwise shown on the "declarations"); or

b. the date "you" could reasonably resume "your" normal business to the conditions that would have existed had no loss occurred,

whichever is earlier.

This does not increase the "limit" for Coverage C - Loss of Income.

5. **Income from Dependent Property** – "We" pay up to $5,000 for "your" actual loss of earnings due to physical loss or damage at the premises of a dependent property caused by or resulting from a covered peril.

The coverage period for this Supplemental Coverage begins at the time of direct physical loss or damage caused by or resulting from a covered peril at the premises of the dependent property and ends on the date when the property at the premises of the property should be repaired, rebuilt, or replaced with reasonable speed and similar quality. The period does not include any increased period required due to the enforcement of any ordinance or law that regulates the construction, use, or repair, or requires the tearing down of any property, or requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of "pollutants". The expiration date will not reduce the coverage period.

The amount of Earnings loss will be reduced to the extent that "you" can resume "your" business, in whole or in part, by using any other available material source or product outlet.

If "you" do not resume "your" business, or do not resume "your" business as quickly as possible, "we" will pay based on the length of time it will have taken to resume "your" business as soon as possible.

Dependent property means property owned by others whom "you" depend on to:

a. Deliver materials or services to "you", or to others for "your" account. But services does not mean water, communication, or power supply;

b. Accept "your" products or services;

c. Manufacture "your" products for delivery to "your" customers under contract for sale; or

d. Attract customers to "your" business.

The dependent property must be located in the "basic territory" of this policy.

## PERILS COVERED

The Perils Covered apply to Coverage A - Buildings, Coverage B - Business Personal Property, and Coverage C - Loss of Income.

"We" cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

"We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Civil Authority** - "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

   "We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this policy.

2. **Certain Computer-Related Losses** – "We" do not pay for loss caused by:

   a. The failure, malfunction, or inadequacy of:

      1) any of the following, whether belonging to any "insured" or to others:

         a) "Computer" hardware, including microprocessors or other electronic data processing equipment as may be described elsewhere in this policy;

         b) "Computer" application software or other "electronic media and records' as may be described elsewhere in this policy;

         c) "Computer" operating systems and related software;

         d) "Computer" networks;

         e) Microprocessors ("computer" chips) not part of any "computer" system; or

         f) Any other computerized or electronic equipment or components; or

      2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the above items listed in 1) above;

      due to the inability to correctly recognize, distinguish, interpret, or accept one or more dates or times. An example is the inability of "computer" software to recognize the year 2000.

b. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement, or supervision provided or done by "you" or for "you" to determine, rectify, or test for any potential or actual problems described in paragraph a. above.

However, if excluded loss or damage, as described in Paragraph a. above results in a "specified peril" under Property Coverage, "we" will pay only for the loss or damage caused by such "specified peril".

"We" will not pay for repair, replacement, or modification of any items in Paragraphs a.1) or a.2) to correct any deficiencies or change any features.

3. **Earth Movement or Volcanic Eruption** - "We" do not pay for loss caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to, earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

"We" do pay for direct physical loss by fire, explosion, or "volcanic action" resulting from either earth movement or eruption, explosion, building glass breakage, or effusion of a volcano.

All volcanic eruptions that occur within a 168 hour period will be considered a single loss.

4. **Nuclear Hazard** - "We" do not pay for loss caused by a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by, contributed to, or aggravated by a covered peril; and whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct physical loss by fire resulting from the nuclear hazard is covered.

5. **Ordinance or Law** - "We" do not pay for loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing its debris. This exclusion also applies when the loss results from an ordinance or law that is enforced even if the property has not been damaged.

6. **Utility Failure** - "We" do not pay for loss caused by interruption of power or other utility services resulting from any cause if the interruption takes place away from the described premises. Interruption includes reduced or increased voltage, low or high pressure, or other interruptions of normal services.

"We" do pay for the direct physical loss by a covered peril which occurs on the described premises as a result of any power interruption.

7. **Water** - "We" do not pay for loss caused by water. This means:

a. flood, surface water, waves, tidal water, or the overflow of a body of water. This includes spray that results from these whether driven by wind or not;

b. mudslide or mudflow;

c. water that backs up or overflows from a sewer, sump, or drain; and

d. water below the surface of the ground. This includes water that exerts pressure on; or flows, seeps, or leaks through or into:

1) basements whether paved or not;

2) doors, windows, or other openings;

3) foundations, floors, or paved surfaces; or

4) swimming pools, septic tanks, or other structures.

If fire, explosion, or sprinkler leakage results, "we" do pay for the resulting loss.

8. **War** - "We" do not pay for loss caused by war. This means:

a. declared war, undeclared war, civil war, insurrection, rebellion, or revolution;

b. a warlike act by a military force or by military personnel;

c. the destruction, seizure, or use of the property for a military purpose; or

d. the discharge of a nuclear weapon, even if it is accidental.

9. **"Fungi", Wet Rot, Dry Rot, or Bacteria** - "We" do not cover loss caused by the presence, growth, proliferation, spread, or any activity of "fungi", wet or dry rot, or bacteria.

   But if "fungus", wet or dry rot, or bacteria result in a "specified peril", "we" will pay for the loss or damage caused by that "specified peril".

   This exclusion does not apply to:

   a. when "fungus", wet or dry rot, or bacteria result from fire or lightning; or

   b. to the extent that coverage is provided in the Additional Property Coverage – Limited Coverage for "Fungus", Wet Or Dry Rot, Or Bacteria if any, with respect to loss or damage caused by a covered peril, other than fire or lightning.

10. **Weather** - "We" do not pay for loss caused by weather conditions if the weather conditions contribute in any way with a cause or event excluded in paragraphs 1. through 9. above.

    "We" do pay for any resulting loss caused by a covered peril unless the resulting loss itself is excluded.

---

## ADDITIONAL EXCLUSIONS

"We" do not pay for loss if one or more of the following exclusions apply to the loss:

1. **Animals** - "We" do not pay for loss caused by nesting or infestation, or discharge or release of waste products or secretions of animals, including birds, or insects. "We" pay for any resulting breakage of building glass or loss caused by a "specified peril".

2. **Collapse** - "We" do not pay for loss caused by collapse, except as provided in the Additional Property Coverage for Collapse. If loss caused by a covered peril results at the described premises, "we" pay for that resulting loss.

3. **Contamination or Deterioration** - "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, rust, or any quality, fault, or weakness in covered property that causes it to damage or destroy itself. "We" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

4. **Criminal, Fraudulent, or Dishonest Acts** - "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts, alone or in collusion with another, whether or not occurring during the hours of employment by:

   a. "you";

   b. others who have an interest in the property;

   c. others to whom "you" entrust the property;

   d. "your" partners, officers, directors, trustees, members, managers, joint venturers; or

   e. the employees or agents of a., b., c., or d. above, whether or not they are at work.

   This exclusion does not apply to acts of destruction of property by "your" employees, but theft by employees is not covered by this policy.

   With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

5. **Defects, Errors, and Omissions** - "We" do not pay for loss which results from one or more of the following:

   a. an act, error, or omission (negligent or not) relating to:

      1) land use;

      2) the design, specification, construction, workmanship, installation, or maintenance of property;

      3) planning, zoning, development, siting, surveying, grading, or compaction; or

      4) maintenance of property (including land, structures, or improvements);

      whether on or off the described premises;

   b. a defect, a weakness, the inadequacy, a fault, or unsoundness in materials used in construction or repair, whether on or off the described premises; or

   c. the cost to make good an error in design.

In addition, "we" do not pay for loss to Business Personal Property caused by deficiency or defects in design, specifications, materials, or workmanship, or caused by latent or inherent defects.

"We" do pay for any resulting loss caused by a covered peril unless the resulting loss itself is excluded.

6. **Electrical Currents** - "We" do not pay for loss caused by arcing or by electrical currents other than lightning. If a fire results from artificially generated electrical current, "we" pay for only the loss caused by fire.

7. **Electrical Disturbance** – "We" do not pay for loss caused by electrical or magnetic injury, disturbance, or erasure of "electronic media and records", except as provided for under Extensions Of Coverage.

"We" do pay for direct loss or damage caused by lightning.

8. **Errors or Omissions** – "We" do not pay for loss caused by errors or omissions in:

   a. programming, processing, or storing data, as described under "electronic media and records" or in any "computer" operations;

   b. processing or copying "valuable papers and records"; or

   c. giving improper instructions.

   If fire or explosion results, "we" do pay for the resulting loss.

9. **Explosion** - "We" do not pay for loss caused by explosion of steam boilers, steam pipes, steam turbines, or steam engines that "you" own or lease or that are operated under "your" control. If a fire or combustion explosion results, "we" do pay for the resulting loss. "We" also pay for loss caused by the explosion of gas or fuel in a firebox, combustion chamber, or flue.

10. **Freezing** - "We" do not pay for loss caused by water, other liquids, powder, or molten material that leaks or flows from plumbing, heating, air-conditioning systems, or appliances (other than fire protective systems) as a result of freezing. This does not apply if "you" use reasonable care to maintain heat in the building or structure; or "you" drain the equipment and turn off the supply if the heat is not maintained.

11. **Installation, Testing, Repair** – "We" do not pay for loss caused by errors or deficiency in design, installation, testing, maintenance, modification, or repair of "your" "computer" system including "electronic media and records".

    If fire or explosion results, "we" do pay for the resulting loss.

12. **Loss of Use** – "We" do not pay for loss caused by loss of use, delay, or loss of market.

13. **Neglect** – "We" do not pay for loss caused by neglect of an "insured" to use all reasonable means to save and preserve property from further damage at and after the time of loss.

14. **Mechanical Breakdown** - "We" do not pay for loss caused by mechanical breakdown or rupturing or bursting of moving parts of machinery caused by centrifugal force. "We" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

15. **Pollutants** - "We" do not pay for loss caused by release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

16. **Seepage** - "We" do not pay for loss caused by, or resulting from, continuous or repeated seepage or leakage from within a plumbing, heating, or air-conditioning system, or domestic appliance.

17. **Settling, Cracking, Shrinking, Bulging, or Expanding** - "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, footings, foundations, walls, ceilings, or roofs. "We" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

18. **Smog** - "We" do not pay for loss caused by smog.

19. **Smoke, Vapor, or Gas** - "We" do not pay for loss caused by smoke, vapor, or gas from agricultural smudging or industrial operations.

20. **Temperature/Humidity** - "We" do not pay for loss to personal property caused by dampness, dryness, or changes in or extremes of temperature. "We" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

21. **Voluntary Parting** - "We" do not pay for loss caused by voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

22. **Wear and Tear** - "We" do not pay for loss caused by wear and tear, marring, or scratching. "We" do pay for any resulting breakage of building glass or loss caused by a "specified peril".

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** - In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **Protect Property** - "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a covered peril if a covered peril has already caused a loss to covered property. However, "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a covered peril. This does not increase "our" "limit".

3. **Proof of Loss** - "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title or occupancy of the covered property during the policy period;

   e. detailed estimates for repair or replacement of covered property;

   f. available plans and specifications of buildings or structures;

   g. detailed estimates of any covered loss of income and expenses; and

   h. an inventory of damaged and undamaged covered personal property showing in detail the quantity, description, cost, actual cash value, and amount of the loss. "You" must attach to the inventory copies of all bills, receipts, and related documents that substantiate the inventory.

4. **Examination Under Oath** - "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of the others.

5. **Records** - "You" must produce records, including tax returns and bank microfilms of all cancelled checks, relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** - "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** - "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** - "We" do not have to accept any abandonment of property.

9. **Intent to Continue Business** - If "you" intend to continue "your" business, "you" must resume all or part of "your" business as soon as possible.

## VALUATION OF PROPERTY LOSSES

The valuation of property losses shall be based on the following provisions:

1. **Replacement Cost** - The value of covered property is based on its replacement cost without a deduction for depreciation, unless Actual Cash Value Coverage is shown on the "declarations". However, these replacement cost "terms" do not apply to paragraphs 2. through 10. below.

   Replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. "You" may make a claim for the actual cash value of the damaged property before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

However, if the cost to repair or replace the damaged building property is $2,500 or less, "we" will settle the loss according to the replacement cost provisions listed above, whether or not the actual repair or replacement is complete.

2. **Property Not Eligible for Replacement Cost** - The value of the following property is based on its actual cash value at the time of the loss:

   a. household contents, except personal property in apartments or rooms furnished by "you" as landlord;

   b. manuscripts;

   c. objects of art, rarity, or antiquity;

   d. personal property of others. However, if an item(s) of personal property of others is subject to a written contract which governs "your" liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which "you" are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable "limit"; and

   e. used or second-hand merchandise held for sale or in storage.

   Actual cash value includes a deduction for depreciation.

3. **Actual Cash Value Coverages A or B** - Paragraph 1. Replacement Cost, does not apply to property for which Actual Cash Value Coverage is shown on the "declarations".

   When Actual Cash Value Coverage is shown for a Coverage A or Coverage B entry on the "declarations", the value of that property is based on its actual cash value at the time of the loss with a deduction for depreciation.

4. **Glass** - The value of glass is based on the cost of safety glazing material where required by code, ordinance, or law.

5. **Loss to Parts** - The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

6. **Money** - The value of "money" will be based on its face value.

7. **Pair or Set** - The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

8. **Securities** - The value of "securities" will be based on their actual cash value at the close of business on the day the loss was discovered.

9. **Tenant's Improvements** - Tenant's improvements losses will be based on replacement cost, without a deduction for depreciation, if repaired or replaced at "your" expense within a reasonable time. The value of tenant's improvements losses is based on a portion of "your" original cost if not repaired or replaced within a reasonable time. This portion is determined as follows:

   a. Divide the number of days from the date of the loss to the expiration date of the lease by the number of days from the date of installation to the expiration date of the lease; and

   b. Multiply the figure determined in 9.a. above by the original cost.

   If "your" lease contains a renewal option, the expiration of the lease in this procedure is replaced by the expiration of the renewal option period.

   Tenant's improvements losses are not covered if repaired or replaced at another's expense.

10. **Valuable Papers and Records** - The value of "valuable papers and records" is based on the cost of restoration or replacement, including the cost of data entry, re-programming, "computer" consultation services, and the media on which the data or programs reside. To the extent that the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

11. **Accounts Receivable** – The value of accounts receivable will be determined as follows:

a. If "you" cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

1) "we" will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

2) "we" will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

b. The following will be deducted from the total amount of accounts receivable, however that amount is established:

1) the amount of the accounts for which there is no loss or damage;

2) the amount of the accounts that "you" are able to reestablish or collect;

3) an amount to allow for probable bad debts that "you" are normally unable to collect; and

4) all unearned interest and service charges.

## HOW MUCH WE PAY

1. **Insurable Interest** - "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** - Except as provided under items a. and b. below, "we" will pay only that part of "your" loss over the deductible amount stated on the "declarations" in any one occurrence.

a. The most "we" will deduct from "your" loss under the following coverages is $250 in any one occurrence:

1) "Money" and "Securities"; and

2) Glass; and,

if provided by the policy:

1) Employee Dishonesty; and

2) Outdoor Signs.

If an occurrence results in loss under any of the coverages listed above, as well as in loss under other coverages, the $250 deductible amount described in this provision will be subtracted from the deductible amount shown on the "declarations".

b. No deductible applies to Fire Department Service Charge, Coverage C - Loss of Income, Accounts Receivable, or Fire Extinguishing Systems.

3. **Loss Settlement Terms** - Subject to paragraphs 1., 2., 4., 5., 6., and 7. under How Much We Pay, "we" pay the lesser of:

a. the amount determined under Valuation;

b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

c. the "limit" that applies to covered property.

4. **Insurance Under More Than One Coverage** - If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim or loss sustained.

5. **Insurance Under More Than One Policy** - "You" may have another policy subject to the same plan, "terms", conditions, and provisions as this policy. If "you" do, "we" pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

6. **Automatic Increase** - When a percentage increase is shown on the "declarations" for a Coverage A or Coverage B entry, the corresponding "limit" is increased annually by the percentage shown. The increase applies proportionally from the date of the most recent "limit". The increase applies only to the "limit" shown on the "declarations" for the corresponding Coverage A or Coverage B entry.

7. **Seasonal Increase** - The Coverage B "limits" shown on the "declarations" will automatically increase by 25% to provide for seasonal increase. This increase applies only if "your" business personal Property "limit" is at least 100% of "your" average monthly values for the 12 months immediately preceding the date of the loss or damage.

If "you" have been in business less than 12 months, the "limit" of insurance must be 100% of "your" average monthly values for the time "you" have been in business.

8. **Signs Attached to Buildings** – The most "we" will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

## LOSS PAYMENT

1. **Our Options** - "We" may:

   a. pay the value of the loss;

   b. pay the cost of repairing or replacing the loss;

   c. rebuild, repair, or replace with property of equivalent kind and quality, to the extent practicable; or

   d. take all or any part of the damaged property at the agreed or appraised value.

   "We" must give "you" notice of "our" intent within 30 days after "we" have received a satisfactory proof of loss.

2. **Your Losses** - "We" adjust all losses with "you". Payment is made to "you" unless another loss payee is named in the policy. A covered loss is payable 30 days after a satisfactory proof of loss is received, and:

   a. the amount of the loss has been agreed to in writing;

   b. an appraisal award has been filed with "us"; or

   c. a final judgment has been entered.

3. **Property of Others** - Losses to property of others may be adjusted with and paid to:

   a. "you" on behalf of the owner; or

   b. the owner.

If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER PROPERTY COVERAGE CONDITIONS

1. **Appraisal** - If "you" and "we" do not agree on the amount of the loss, either party may demand that the amount be determined by appraisal.

   If either makes a written demand for appraisal, each selects a competent, independent appraiser and notifies the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers then determine and state separately the amount of each loss.

   The appraisers also determine the actual cash value of covered property items at the time of the loss, if requested.

   A written agreement is binding on all parties. If the appraisers fail to agree within a reasonable time, they submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three is binding on all parties.

   Each appraiser is paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire is paid equally by "you" and "us".

   If there is an appraisal, "we" retain "our" right to deny the claim.

2. **Benefit to Others** - Insurance under the Property Coverage shall not directly or indirectly benefit anyone having custody of "your" property.

3. **Control of Property** - The Property Coverage is not affected by any act or neglect beyond "your" control.

4. **Death of an Individual Named Insured** - If "you" die, "your" rights and duties under the Property Coverages pass to "your" legal representative or other person having proper temporary custody of "your" property.

5. **Mortgage Provisions** - If a mortgagee (mortgagee includes trustee) is named in this policy, loss to building property shall be paid to the mortgagee and "you" as their interest appears. If more than one mortgagee is named, they shall be paid in order of precedence.

The insurance for the mortgagee continues in effect even when "your" insurance may be void because of "your" acts, neglect, or failure to comply with the coverage "terms". The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify "us".

If "we" cancel this policy, "we" notify the mortgagee at least ten days before the effective date of cancellation, if "we" cancel for "your" nonpayment of premium, or 30 days before the effective date of cancellation if "we" cancel for any other reason.

"We" may request payment of the premium from the mortgagee, if "you" fail to pay the premium.

If "we" pay the mortgagee for a loss where "your" insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from "you" then belongs to "us". This does not affect the mortgagee's right to collect the remainder of the mortgage debt from "you". As an alternative, "we" may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

If "we" choose not to renew this policy, "we" give written notice to the mortgagee at least ten days before the expiration date of this policy.

6. **Recoveries** - If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "You" must notify "us" promptly if "you" recover property or receive payment.

   b. "We" must notify "you" promptly if "we" recover property or receive payment.

   c. "We" will pay any recovery expenses incurred, and the expense to repair the recovered property, subject to the "limit" of insurance.

   d. "You" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree.

   e. If the claim paid is less than the agreed loss due to a deductible or other limiting "term" of this policy, any recovery is pro rated between "you" and "us" based on "our" respective interest in the loss.

7. **Subrogation** - If "we" pay for a loss under the Property Coverages, "we" may require that "you" assign to "us" any right of recovery against others up to the amount "we" paid.

"You" may waive "your" right to recover, in writing, before the loss takes place without voiding coverage.

"We" are not liable for a loss if, after the loss, "you" impair "our" right to recover. But, "you" may waive "your" right to recover in writing after a loss only as to the following parties:

   a. someone insured under the Property Coverages;

   b. "your" tenant;

   c. a business firm owned or controlled by "you"; or

   d. a business firm which owns or controls "your" business.

8. **Suit Against Us** - No suit to recover any loss may be brought against "us" unless:

   a. the "terms" of the Property Coverages have been fully complied with; and

   b. the suit is commenced within one year after the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

9. **Vacancy**

   a. Description of Terms

      1) As used in this Vacancy Condition, the "term" building and the "term" vacant have the meanings set forth in Paragraphs a) and b) below:

         a) When this policy is issued to a tenant, and with respect to that tenant's interest in covered property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at 31% of its total square footage is:

   i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

   ii) Used by the building owner to conduct customary operations.

2) Buildings under construction or renovation are not considered vacant.

b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

1) "We" will not pay for loss or damage caused by any of the following:

   a) Vandalism;

   b) Sprinkler leakage, unless "you" have protected the system against freezing;

   c) Building glass breakage;

   d) Water damage;

   e) Theft; or

   f) Attempted Theft.

2) The amount "we" pay for any loss that is otherwise excluded is reduced by 15%.

## OPTIONAL PROPERTY COVERAGES

If indicated as applicable on the "declarations", the following Optional Property Coverages also apply. All Optional Property Coverages are subject to all of the "terms" applying to the Common Policy Conditions and Property Coverages of this policy, except as provided below.

1. **Employee Dishonesty**

a. "We" cover direct loss or damage to business personal property, including "money" and "securities", that "you" own, hold, or for which "you" are legally liable. "We" pay for only those losses resulting from dishonest acts:

1) committed by any of "your" employees, acting alone, or in collusion with other persons; and

2) that occur within the policy period.

Dishonest acts as used in this coverage means dishonest or fraudulent acts committed with the apparent intent to cause "you" to sustain loss or damage and to obtain financial benefit for any employee, person, or organization. The financial benefit does not include earned salaries, commissions, bonuses, fees, profit sharing, or other employee benefits.

b. The most "we" will pay in any one occurrence for Employee Dishonesty is the "limit" of insurance shown on the "declarations", even though the occurrence may extend over a number of policy periods.

All loss or damage caused by one or more persons, and involving a single act or series of acts is considered one occurrence.

c. Perils Covered and Additional Exclusions do not apply to this Optional Property Coverage.

Under Perils Excluded, only the following excluded perils apply to this Optional Property Coverage:

1. Civil Authority;

4. Nuclear Hazard; and

8. War.

d. In addition to the above exclusions, "we" do not pay for loss or damage:

1) occurring after discovery of any dishonest act committed by the employee whether before or after being employed by "you". This includes discovery by "you" or by any of "your" partners, managers, officers, or directors not in collusion with the employee;

2) resulting from an act that "you" or any of "your" partners or members commit, whether acting alone, or in collusion with any employees, or other persons;

3) where the only proof of the loss or amount of the loss is dependent upon an inventory or a profit and loss computation;

4) that is not discovered within one year of the end of this policy period;

5) occurring outside the "basic territory", except as provided in the Supplemental Employee Dishonesty Coverage; or

6) legal expense or any indirect loss.

e. Supplemental Employee Dishonesty Coverage

1) "We" will cover loss caused by an employee who is temporarily out of the "basic territory" for not more than 90 days. This is not an additional amount of insurance.

2) "We" will cover loss that would have been covered by the prior insurance, except that the time to discover the loss had expired, and which would be covered by this policy had it been in effect when the acts or events causing the loss or damage occurred. This coverage is limited to the lesser of the "limits" applicable to the prior insurance or the "limit" of this coverage. This is not an additional amount of insurance.

This supplemental coverage applies only if this Employee Dishonesty Coverage replaces prior dishonesty coverage and became effective on the expiration or termination date of the prior coverage.

f. "You" must keep records of property covered so that "we" can verify the amount of loss.

2. Outdoor Signs

a. "We" cover direct loss or damage to outdoor signs owned by "you" or in "your" care, custody, or control at the premises described on the "declarations".

b. Perils Covered do not apply to this Optional Property Coverage.

Under Perils Excluded, only the following excluded perils apply to this Optional Property Coverage.

1. Civil Authority;

3. Nuclear Hazard; and

8. War.

Under Additional Exclusions, only the following exclusions apply to this Optional Property Coverage:

3. Contamination or Deterioration;

6. Electrical Currents;

14. Mechanical Breakdown; and

22. Wear and Tear.

c. The most "we" will pay for loss in any one occurrence is the "limit" shown on the "declarations" for Outdoor Signs.

d. This optional coverage supersedes all limitations in this policy that apply to outdoor signs.

# COMMERCIAL LIABILITY COVERAGES

This Liability Coverage Section contains the definitions, coverage descriptions, exclusions, limitations, and conditions that apply to the Businessowners Liability Coverages.

## DEFINITIONS

1. The words "you" and "your" mean the person, persons, or organization named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about "your" goods, products, or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. regarding web-sites, only that part of a website that is about "your" goods, products, or services for the purposes of attracting customers or supporters is considered an advertisement.

4. "Auto" means a land motor vehicle, a trailer, or a semi-trailer which is designed for use on public roads.

   "Auto" includes attached machinery and equipment.

5. "Basic territory" means the United States of America, its territories and possessions, Canada, and Puerto Rico.

6. Bodily injury" means bodily harm, sickness, or disease sustained by a person and includes required care and loss of services. "Bodily injury" includes death that results from bodily harm, sickness, or disease. "Bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from a physical injury.

7. "Coverage territory" means:

   a. the "basic territory";

   b. international waters or airspace, only if the "bodily injury", "property damage", "personal and advertising injury" occurs in the course of travel to or from the "basic territory";

c. the world, if the injury or damage arises out of:

   1) "products" "you" have made or sold in the "basic territory";

   2) the activities of a person who normally resides in the "basic territory", but is away for a short time on "your" business; or

   3) "personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication; and

   provided that the "insured's" liability to pay "damages" has been determined in a suit on the merits in the "basic territory", or in a settlement that "we" have agreed to.

8. "Damages" means compensation in the form of "money" for a person who claims to have suffered an injury.

9. "Declarations" means all pages labeled declarations, supplemental declarations, or schedules, which pertain to this policy.

10. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

11. "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents, or by-products produced or released by fungi.

12. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

13. "Impaired property" means tangible property (other than "products" or "your work"):

   a. whose value has been decreased:

   1) because it includes "products" or "your work" that is, or is believed to be, deficient or dangerous; or

   2) because "you" failed to carry out the terms of a contract; and

b. whose value can be restored:

   1) by the repair, replacement, adjustment, or removal of "products" or "your work"; or

   2) by "your" fulfilling the terms of the contract.

14. "Insured":

a. means:

   1) "you" and "your" spouse, but only with respect to the conduct of a business of which "you" are the sole owner, if shown on the "declarations" as an individual;

   2) "you" and all "your" partners or members and their spouses, but only with respect to the conduct of "your" business", if shown on the "declarations" as a partnership or a joint venture;

   3) "you" and all "your" members and managers, but only while acting within the scope of their duties, if shown on the "declarations" as a limited liability company; or

   4) "you" and all of "your" executive officers and directors, but only while acting within the scope of their duties, if shown on the "declarations" as an organization (other than a partnership, joint venture, or a limited liability company). It also includes "your" stockholders, but only for their liability as such.

b. includes:

   1) any person or organization, except "your" "employees" or "volunteer workers", while acting as "your" real estate manager;

   2) if "you" die during the policy period, "your" legal representative while acting within the scope of those duties as such, or a person who has custody of "your" property with respect to liability arising out of the maintenance or use of that property until "your" legal representative is appointed. "Your" legal representative has all "your" rights and duties under this coverage;

   3) with respect to the operation, with "your" permission, of mobile equipment:

     a) "your" "employee" in the course of employment. This does not apply to a fellow "employee" injured in the course of employment;

     b) any other person, including another person or an organization legally liable for the conduct of such person, but only:

       1)) for liability arising out of the operation of the equipment; and

       2)) if there is no other insurance covering the liability available to them;

     c) no person or organization is an "insured" for "property damage" to property owned by, rented to, in the charge of, or occupied by "you", or an employer of any person who is an "insured" under paragraph 2.b.3).

   4) "your" "volunteer workers" only while performing duties related to the conduct of "your" business or "your" "employees", for acts within the scope of their employment by "you" (this does not include "your" managers if "you" are a limited liability company or "your" executive officers if "you" are an organization other than a limited liability company). None of these "employees" or "volunteer workers" are "insureds" for:

     a) "bodily injury" and "personal and advertising injury" to "you", to a fellow "employee", or to other "volunteer workers"; or

     b) "property damage" to property owned by, rented to, or loaned to "employees" or "volunteer workers", or any of "your" partners or members and their spouses (if "you" are a joint venture or a partnership) or any of "your" members (if "you" are a limited liability company); and

   5) any organization (other than a joint venture, a partnership, or limited liability company) newly acquired or formed by "you", and in which "you" have a majority interest.

   Such an organization is not an "insured":

     a) if there is other similar insurance available to it;

     b) after 90 days immediately following that acquisition or formation or the end of the policy period, whichever is earlier;

c) for "bodily injury" or "property damage" that occurred prior to the acquisition or formation; or

d) for "personal and advertising injury" arising out of an offense committed prior to the acquisition or formation.

No person or organization is an "insured" with respect to the conduct of a current or past partnership, joint venture, or limited liability company that is not named on the "declarations" as an "insured".

15. "Leased worker" means a person whom "you" lease from a labor leasing firm under a contract or agreement to perform duties related to the conduct of "your" business. "Leased worker" does not include a "temporary worker".

16. "Limit" means the amount of coverage that applies.

17. "Loading or unloading" means the movement of property:

a. starting with after it is removed from the point where it has been accepted for transit by "auto", aircraft, or watercraft;

b. continuing while it is in or on such vehicle; and

c. ending when it has been removed from the vehicle at its point of destination.

"Loading or unloading" includes movement by:

a. a hand truck; or

b. any mechanical device only when attached to the vehicle.

18. "Occurrence" means an accident and includes repeated exposure to similar conditions.

19. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. oral or written publication of material, in any manner:

1) that slanders or libels a person or organization;

2) that disparages a person's or an organization's goods, products, or services; or

3) that violates a person's right of privacy;

b. false arrest, detention, or imprisonment;

c. malicious prosecution;

d. wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. This offense must be committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises;

e. misappropriation of advertising ideas or style of doing business; or

f. infringement of copyright, title, slogan, trademark, or trade name in "your" "advertisement".

20. "Pollutants" means:

a. any solid, liquid, gaseous, thermal, or radioactive irritant, or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be disposed of as well as recycled, reclaimed, or reconditioned.

b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

21. "Products/completed work hazard" -

a. "Products hazard" means "bodily injury" or "property damage" occurring away from premises "you" own or rent and arising out of "products" after physical possession of the "products" has been relinquished to others. The "bodily injury" or "property damage" must occur away from premises "you" own or rent unless "your" business includes selling, handling, or distributing "your" "products" for consumption on premises owned by or rented to "you".

b. "Completed work hazard" means "bodily injury" or "property damage" occurring away from premises "you" own or rent and arising out of "your work". It does not include work that has not been completed, or that has not been abandoned.

"Your work" is deemed completed at the earliest of the following times:

1) when all work specified in "your" contract has been done;

2) when all "your work" to be done at a job site has been completed if "your" contract includes work at more than one site; or

3) when "your work" at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same job site.

Work which requires further service, maintenance, correction, repair, or replacement because of defect or deficiency, but which is otherwise complete, shall be deemed completed.

c. Neither of these hazards include "bodily injury" or "property damage" arising out of:

1) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle, created by "loading or unloading"; or

2) the presence of tools, uninstalled equipment, or abandoned or unused materials.

22. "Products" means goods or products manufactured, sold, handled, distributed, or disposed of by "you", others trading under "your" name, or a person or organization whose business or assets "you" have acquired.

"Products" includes:

a. warranties or representations made at any time with respect to the fitness, quality, durability, or performance of "products";

b. containers (other than vehicles), materials, parts, or equipment furnished in connection with such "products"; and

c. providing or failure to provide warnings or instructions.

"Products" does not include:

a. vending machines or other property that is rented to or placed for the use of others, but not sold; or

b. real property.

23. "Property damage" means:

a. physical injury or destruction of tangible property; or

b. the loss of use of tangible property whether or not it is physically damaged. Loss of use is deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts, or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices, or any other media which are used with electronically controlled equipment.

24. "Temporary worker" means a person who is furnished to "you" as a temporary substitute for an "employee".

25. "Terms" are all provisions, limitations, exclusions, conditions, and definitions that apply to the Commercial Liability Coverage.

26. "Volunteer workers" means a person who is not "your" "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by "you", and is not paid a fee, salary or other compensation by "you" or anyone else for their work performed for "you".

27. "Your work" means:

a. work or operations performed by "you" or on "your" behalf;

b. materials, parts, and equipment supplied for such work or operations;

c. written warranties or representations made at any time regarding quality, fitness, durability, or performance of any of the foregoing; and

d. providing or failing to provide warnings or instructions.

## PRINCIPAL COVERAGES

"We" provide insurance for the following coverages indicated by a specific "limit" or premium charge on the "declarations".

## COVERAGE L - BODILY INJURY LIABILITY/PROPERTY DAMAGE LIABILITY

"We" pay all sums which an "insured" becomes legally obligated to pay as "damages" due to "bodily injury" or "property damage" to which this insurance applies. The "bodily injury" or "property damage" must be caused by an "occurrence" which takes place in the "coverage territory", and the "bodily injury" or "property damage" must occur during the policy period.

## COVERAGE M - MEDICAL PAYMENTS

1. "We" pay the medical expenses defined below for "bodily injury" caused by an accident:

   a. on premises "you" own or rent;

   b. on ways adjacent or next to premises "you" own or rent; or

   c. arising out of "your" operations.

2. "We" pay such expenses regardless of fault but only if:

   a. they arise out of an accident that occurred in the "coverage territory" and during the policy period; and

   b. they are incurred and reported within one year of the accident.

3. Medical expenses means the reasonable and necessary expenses for:

   a. medical, surgical, x-ray, and dental services, including prosthetic devices and eye glasses;

   b. ambulance, hospital, professional nursing, and funeral services; and

   c. first aid at the time of an accident.

## COVERAGE N - PRODUCTS/COMPLETED WORK

"We" pay all sums which an "insured" becomes legally obligated to pay as "damages" due to "bodily injury" or "property damage" arising out of the "products/completed work hazard" to which this insurance applies. The "bodily injury" or "property damage" must be caused by an "occurrence" which takes place in the "coverage territory", and the "bodily injury" or "property damage" must occur during the policy period.

## COVERAGE O - FIRE LEGAL LIABILITY

"We" pay for "property damage" to buildings, or parts thereof, which "you" rent from another, or which are loaned to "you", if the "property damage" is caused by fire or explosion for which "you" are legally liable. Buildings include fixtures permanently attached thereto.

All of the exclusions otherwise applicable to "property damage" do not apply to this coverage. However, "we" do not cover:

1. liability arising under any contract or agreement to indemnify any person or organization for damage by fire to the premises;

2. liability arising out of the rendering or failure to render a professional service; except as covered under Incidental Medical Malpractice Injury Coverage; or

3. liability arising out of "property damage":

   a. which is expected by, directed by, or intended by the "insured"; or

   b. that is the result of intentional and malicious acts of the "insured".

## COVERAGE P - PERSONAL AND ADVERTISING INJURY LIABILITY

"We" pay all sums which an "insured" becomes legally obligated to pay as "damages" due to "personal and advertising injury" to which this insurance applies.

1. "We" cover "personal and advertising injury" caused by an offense arising out of "your" business.

2. The "personal and advertising injury" offense must be committed:

   a. within the "coverage territory"; and

   b. during the policy period.

## SUPPLEMENTAL COVERAGES

Subject to all the "terms" of the Principal Coverages, "we" provide the following supplemental coverages. They do not increase the "limits" stated for the Principal Coverages.

### CONTRACTUAL LIABILITY

1. "We" cover "bodily injury" or "property damage" liability which is assumed under the following contracts or agreements:

   a. lease of premises;

   b. easement or license agreement (this does not include an agreement in connection with any construction or demolition operation within 50 feet of a railroad);

   c. promise to indemnify a municipality if required by an ordinance (this does not apply in connection with work done for the municipality);

   d. sidetrack agreement;

   e. elevator maintenance agreement; or

   f. any part of any other contract or agreement relating to the conduct of "your" business (including an indemnification of a municipality in connection with work performed for a municipality) under which "you" assume tort liability to pay "damages" because of "bodily injury" or "property damage". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

2. This coverage does not apply to that part of any contract or agreement:

   a. that indemnifies any person or organization for "bodily injury" or "property damage" arising out of operations within 50 feet of railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass, or crossing;

   b. that indemnifies an architect, engineer, or surveyor for injury or damage arising out of:

      1) preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; or

      2) giving directions or instructions, or failing to give them, if that is the primary caus⸱ of the injury or damage;

   c. under which the "insured", if an architect, engineer, or surveyor, assumes liability for injury or damage arising out of the "insured's" rendering or failing to render professional services, including those listed in 2.b.1) above, and supervisory, inspection, or engineering services; or

   d. that indemnifies any person or organization for damage by fire to premises rented or loaned to "you".

### INCIDENTAL MEDICAL MALPRACTICE INJURY

1. "We" cover "bodily injury" arising out of the rendering or failure to render the following services:

   a. medical, surgical, dental, x-ray, or nursing services or treatment, or the furnishing of food or beverages in connection therewith;

   b. the furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances.

2. This coverage does not apply to:

   a. expenses incurred by an "insured" for first aid to others at the time of an accident;

   b. an "insured" or an "employee" engaged in the business or occupation of providing any of the services described under 1.a. and 1.b. above; or

   c. injury caused by an indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described in 1.a. and 1.b. above.

### MOBILE EQUIPMENT

"We" pay all sums for which an "insured" is legally liable for "bodily injury" or "property damage" resulting from mobile equipment, including attached equipment and machinery.

1. This coverage applies only to land motor vehicles that meet one or more of the following criteria:

   a. Those which are used only on premises owned by or rented to "you" (premises includes adjoining ways).

b. Those which are designed primarily for use off public roads.

c. Those which travel on crawler treads.

d. Those which are self-propelled and designed or used only to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle:

   1) power cranes, shovels, loaders, diggers, or drills;

   2) concrete mixers (this does not include the mix-in-transit type); and

   3) graders, scrapers, rollers, and other road construction or repair equipment.

e. Those which are not self-propelled, but are used primarily to afford mobility to the following types of equipment permanently attached thereto:

   1) air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment);

   2) geophysical exploration, lighting, and well servicing equipment; and

   3) cherry pickers and similar devices used to raise or lower workers.

2. This coverage does not apply to self-propelled vehicles with the following types of permanently attached equipment:

a. equipment designed primarily for snow removal, street cleaning, road maintenance other than road construction, or resurfacing;

b. cherry pickers and similar devices used to raise or lower workers;

c. air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment); or

d. geophysical exploration, lighting, and well servicing equipment.

"We" cover "bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraphs 2.b., 2.c., and 2.d. above.

"We" will provide any liability, uninsured motorists, no fault, or other coverages required by any motor vehicle insurance law. "We" will provide the required "limits" for such required coverage.

## DEFENSE COVERAGE

Payments under this coverage are in addition to the "limits" for the Commercial Liability Coverage.

1. "We" have the right and duty to defend a suit seeking "damages" which may be covered under the Commercial Liability Coverage. "We" may make investigations and settle claims or suits "we" decide are appropriate.

   Suit includes any alternative dispute resolution proceeding involving "bodily injury", "property damage", and "personal and advertising injury" to which:

a. "you" must submit; or

b. "you" submit with "our" consent.

2. "We" do not have to provide defense after "we" have paid an amount equal to the "limit" as the result of:

a. a judgment; or

b. a written settlement agreed to by "us".

3. If "we" defend a suit, "we" will pay:

a. The costs taxed to the "insured".

b. The expenses incurred by "us".

c. The actual loss of earnings by the "insured" for the time spent away from work at "our" request. "We" pay up to $250 per day.

d. The necessary expenses incurred by the "insured" at "our" request.

e. Pre-judgment interest awarded against the "insured" on that part of the judgment "we" pay. If "we" offer to pay the "limit", "we" will not pay any pre-judgment interest based on that period of time after the offer.

f. The interest which accrues beginning with entry of a judgment and ending when "we" tender, deposit in court, or pay up to "our" "limit".

g. The cost of appeal bonds or bonds for the release of attachments up to "our" "limit". "We" are not required to apply for or furnish such bonds.

h. The cost, up to $500, for bail bonds required of an "insured" because of an accident or traffic violation arising out of the use of a vehicle to which Coverage L applies. "We" are not required to apply for or furnish such bonds.

4. If "we" defend an "insured" against a suit and an indemnitee of the "insured" is also named as a party to the suit, "we" will defend that indemnitee if all of the following conditions are met:

a. the suit against the indemnitee seeks "damages" for which the "insured" has assumed the liability of the indemnitee in a contract or agreement that is an insured contract;

b. this insurance applies to such liability assumed by the "insured";

c. the obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the "insured" in the same insured contract;

d. the allegations in the suit and the information "we" know about the "occurrence" are such that no conflict appears to exist between the interests of the "insured" and the interests of the indemnitee;

e. the indemnitee and the "insured" ask "us" to conduct and control the defense of that indemnitee against such suit and agree that "we" can assign the same counsel to defend the "insured" and the indemnitee; and

f. the indemnitee:

1) agrees in writing to:

a) cooperate with "us" in the investigation, settlement, or defense of the suit;

b) immediately send "us" copies of any demands, notices, summonses, or legal papers received in connection with the suit;

c) notify any other insurer whose coverage is available to the indemnitee; and

d) cooperate with "us" with respect to coordinating other applicable insurance available to the indemnitee; and

2) provide "us" with written authorization to:

a) obtain records and other information related to the suit; and

b) conduct and control the defense of the indemnitee in such suit.

3) so long as the conditions in 4. are met, attorney's fees incurred by "us" in the defense of that indemnitee, necessary litigation expenses incurred by "us" and necessary litigation expenses incurred by the indemnitee at "our" request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 1.b. in Exclusions That Apply to Bodily Injury, Property Damage, and Personal and Advertising Injury in Commercial Liability Coverage section, such payments will not be deemed to be "damages" for "bodily injury" and "property damage" and will not reduce the "limits".

"Our" obligation to defend an "insured's" indemnitee and to pay for attorney's fees and necessary litigation expenses as Supplementary Payments ends when:

a) "we" have used up the applicable "limit" in the payment of judgments or settlements; or

b) the conditions set forth above, or the terms of the agreement described in paragraph (2)(f) above are no longer met.

## EXCLUSIONS

"We" do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

### EXCLUSIONS THAT APPLY TO BODILY INJURY, PROPERTY DAMAGE, AND/OR PERSONAL AND ADVERTISING INJURY

1. "We" do not pay for "bodily injury", "property damage", or "personal and advertising injury" liability which is assumed by the "insured" under a contract or an agreement.

This exclusion does not apply to:

a. liability that an "insured" would have had in the absence of the contract or agreement; or

b. "bodily injury" or "property damage" covered under Contractual Liability Coverage, provided that the "bodily injury" or "property damage" occurs after the effective date of the contract or agreement.

2. "We" do not pay for "bodily injury", "property damage", or "personal and advertising injury" that arises out of the rendering or the failure to render a professional service, except as covered under Incidental Medical Malpractice Injury Coverage.

3. "We" do not pay for "bodily injury", "property damage", or "personal and advertising injury" that arises out of the use of mobile equipment in, or in the practice or preparation for, racing, speed, pulling or pushing, demolition, or stunt activities or contests.

4. "We" do not pay for "bodily injury", "property damage", or "personal and advertising injury" that arises out of transporting mobile equipment by an "auto" owned by, operated by, rented to, or loaned to any "insured".

5. "We" do not pay for "bodily injury", "property damage", or "personal and advertising injury" that arises out of the ownership, operation, occupancy, renting, loaning, supervision, maintenance, use, entrusting, "loading or unloading" of an "auto", aircraft, watercraft, or mobile equipment owned by, operated by, rented to, or loaned to any "insured".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by an "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use, or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

a. "bodily injury" or "property damage" that arises out of "autos" or mobile equipment covered under Mobile Equipment Coverage;

b. the parking of an "auto" on premises owned by, rented to, or controlled by "you" or on the ways immediately adjoining if the "auto" is not owned by or rented to or loaned to "you" or the "insured";

c. liability assumed under a contract covered under Contractual Liability Coverage for the ownership, maintenance, or use of an aircraft or a watercraft;

d. watercraft, if it is on shore on premises owned by, rented to, or controlled by "you"; or

e. watercraft, if it is not owned by "you" and is:

    1) less than 26 feet in length; and

    2) not being used to carry persons or property for a charge.

6. "We" do not pay for "bodily injury", "property damage", or "personal and advertising injury" for which any "insured" may be held liable by reason of:

a. causing or contributing to the intoxication of a person;

b. the furnishing of alcoholic beverages to a person under the influence of alcohol or under the legal drinking age; or

c. a law or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

This exclusion applies if "you" are in the business of manufacturing, distributing, selling, or serving alcoholic beverages.

7. "We" do not pay for "bodily injury", "property damage", or "personal and advertising injury" that arises out of war. War includes undeclared war, civil war, insurrection, rebellion, or revolution, or an act or a condition of war.

8. "We" do not pay for "bodily injury" or "property damage":

a. which is expected by, directed by, or intended by the "insured"; or

b. that is the result of intentional and malicious acts of the "insured".

This exclusion does not apply to "bodily injury" that arises out of the use of reasonable force to protect people or property.

9. "We" do not pay for "bodily injury" or "property damage" included within the "products/completed work hazard" except as covered under Coverage N.

10. "We" do not pay for:

a. "bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants:

1) at or from any premises, site, or location which is, or was at any time, owned by, occupied by, rented to, or loaned to any "insured". This exclusion does not apply to:

   a) "bodily injury" if sustained within a building and caused by smoke, fumes, vapor, or soot from equipment used to heat that building;

   b) "bodily injury" or "property damage" for which "you" may be held liable, if "you" are a contractor and the owner or lessee of such premises, site, or locations has been added to "your" policy as an additional insured with respect to "your" ongoing operations performed for that additional insured at that premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional insured; or

   c) "bodily injury" or "property damage" arising from the heat, smoke, or fumes from a "hostile fire";

2) at or from any premises, site, or location which is or was at any time used by or for any "insured" or others, for the handling, storage, disposal, processing, or treatment of waste;

3) which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "insured" or any person or organization for whom any "insured" may be legally responsible; or

4) at or from any premises, site, or location where any "insured" or any contractor or subcontractor, directly or indirectly under "your" control, is working, if the "pollutants" are brought on or to the premises, site, or location in connection with such work by such "insured", contractor, or subcontractor unless the:

   a) "bodily injury" or "property damage" arising out of the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal, or release of the fuels, lubricants, or other operating fluids, or if such fuels, lubricants, or other operating fluids are brought on or to the premises, site, or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by such "insured", contractor, or subcontractor;

   b) "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes, or vapors from materials brought into that building in connection with operations being performed by "you" or on "your" behalf by a contractor or subcontractor; or

   c) "bodily injury" or "property damage" arising out of heat, smoke, or fumes from a "hostile fire"; or

5) at or from any premises, site, or location where any "insured" or any contractor or subcontractor, directly or indirectly under "your" control, is working, if the work is to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants".

b. any loss, cost, or expense arising out of any:

1) request, demand, order, or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or

2) claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "pollutants".

However, this paragraph does not apply to liability for "damages" because of "property damage" that the "insured" would have in the absence of such request, demand, order, or statutory or regulatory requirement or such claim or suit by or on behalf of a governmental authority.

11. "We" do not pay for:

   a. "bodily injury" or "personal and advertising injury" to an "employee" of the "insured" if it occurs in the course of employment by the "insured"; or

   b. consequential injury to a spouse, child, parent, brother, or sister of such injured "employee".

This exclusion applies where the "insured" is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third party for "damages" arising out of paragraph 11.a. or 11.b. above.

This exclusion does not apply to liability assumed by the "insured" under a contract covered under Contractual Liability Coverage.

12. "We" do not pay for "bodily injury" if benefits are provided or are required to be provided by the "insured" under a workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law.

13. "We" do not pay for "bodily injury" or "personal and advertising injury" that arises out of any:

   a. refusal to employ;

   b. termination of employment;

   c. coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, sexual misconduct, or other employment-related practices, policies, acts, or omissions; or

   d. consequential "bodily injury" or "personal and advertising injury" as a result of 13.a., 13.b., and 13.c. above.

This exclusion applies where the "insured" is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third party for "damages" arising out of paragraph 13.a., 13.b., 13.c., or 13.d. above.

14. "We" do not pay for:

   a. "bodily injury", "property damage", or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of , any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

   b. any loss, cost, or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any responding to, or assessing the effects of, "fungi" or bacteria, by any "insured" or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**ADDITIONAL EXCLUSIONS THAT APPLY ONLY TO PERSONAL AND ADVERTISING INJURY**

1. "We" do not pay for "personal and advertising injury" arising out of willful violation of an ordinance, statute, or regulation by an "insured" or with the "insured's" consent.

2. "We" do not pay for "personal and advertising injury" arising out of:

   a. oral or written publication of material done by or at the direction of an "insured" who knew it was false; or

   b. oral or written publication of the same or similar material by or on behalf of an "insured" that took place prior to the policy.

3. "We" do not pay for "personal and advertising injury" arising out of breach of contract, except an implied contract to use another's advertising ideas in "your" "advertisement".

4. "We" do not pay for "personal and advertising injury" arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in "your" "advertisement".

5. "We" do not pay for "personal and advertising injury" arising from an offense committed by an "insured" whose business is:

   a. advertising, broadcasting, publishing, or telecasting;

   b. designing or determining content of web-sites for others; or

   c. an Internet search, access, content, or service provider.

However, this exclusion does not apply to Paragraphs 19. b., c., and d. of "personal and advertising injury" under Definitions.

For the purposes of this exclusion, the placing of frames, borders, or links, or advertising, for "you" or others anywhere on the Internet, by itself is not considered the business of advertising, broadcasting, publishing, or telecasting.

6. "We" do not pay for "personal and advertising injury" arising out of wrong descriptions of the price of an "insured's" goods, products, or services stated in "your" "advertisement".

7. "We" do not pay for:

   a. "personal injury and advertising injury" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time; or

   b. any loss, cost, or expense arising out of any:

      1) request, demand, or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or

      2) claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "pollutants".

8. "We" do not pay for "personal and advertising injury" arising out of an electronic chatroom or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

9. "We" do not pay for "personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret, or other intellectual property rights.

   However, this exclusion does not apply to infringement, in "your" "advertisement', of copyright, trade dress, or slogan.

10. "We" do not pay for "personal and advertising injury" arising out of the unauthorized use of another's name or product in "your" e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

## ADDITIONAL EXCLUSIONS THAT APPLY ONLY TO PROPERTY DAMAGE

1. "We" do not pay for "property damage" to property owned by, occupied by, or rented to "you", including any costs or expenses incurred by "you", or any other person, organization, or entity, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property, except as covered under Coverage O.

2. "We" do not pay for "property damage" to premises "you" sell, give away, or abandon, if the "property damage" arises out of any part of those premises. This exclusion does not apply if the premises are "your work" and were not occupied, rented, or held for rental by "you".

3. "We" do not pay for "property damage" to property used by or loaned to "you". This exclusion does not apply with respect to liability assumed under a sidetrack agreement.

4. "We" do not pay for "property damage" to either business or non-business personal property in the care, custody, or control of the "insured". This exclusion does not apply with respect to liability assumed under a sidetrack agreement.

5. "We" do not pay for "property damage" to that specific part of real property on which work is being performed by:

   a. "you"; or

   b. a contractor or subcontractor working directly or indirectly on "your" behalf,

   if the "property damage" arises out of such work. This exclusion does not apply with respect to liability assumed under a sidetrack agreement.

6. "We" do not pay for "property damage" to that specific part of any property that must be restored, repaired, or replaced because of faults in "your" work". This exclusion does not apply to:

   a. "property damage" covered under the "products/completed work hazard"; or

   b. liability assumed under a sidetrack agreement.

7. "We" do not pay for "property damage" to "products" if the damage arises out of the "products" or their parts.

8. "We" do not pay for "property damage" to "your work" if the "property damage" arises out of "your work" and is included in the "products/completed work hazard". This exclusion does not apply if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on "your" behalf.

9. "We" do not pay for "property damage" to property that has not been physically injured or destroyed, or to "impaired property", that arises out of:

   a. a delay or failure to perform a contract by "you" or one acting on "your" behalf; or

   b. a defect, deficiency, inadequacy, or unsafe condition in "your work" or "products".

   This exclusion does not apply to the loss of use of other property resulting from sudden and accidental physical injury to or destruction of "your work" or "products" after having been put to its intended use.

10. "We" do not pay for any loss or expense incurred by "you" or anyone else arising out of the loss of use, disposal, withdrawal, recall, inspection, repair, replacement, adjustment, or removal of (including any expenses involved in the withdrawal or recall) of "your work", "products", or "impaired property". This applies when the loss of use, disposal, withdrawal, recall, inspection, repair, replacement, adjustment, or removal was because of a known or suspected defect, deficiency, or unsafe condition.

**ADDITIONAL EXCLUSIONS THAT APPLY ONLY TO MEDICAL PAYMENTS**

These exclusions apply in addition to the other exclusions that apply to "bodily injury".

1. "We" do not pay for medical expenses for "bodily injury" to an "insured", except "volunteer workers".

2. "We" do not pay for medical expenses for "bodily injury" to a person hired by or on behalf of any "insured" to do work for:

   a. an "insured"; or

   b. a tenant of an "insured".

3. "We" do not pay for medical expenses for "bodily injury" to a person injured on that part of the premises owned by or rented to "you" that the person normally occupies.

4. "We" do not pay for medical expenses for "bodily injury" to a person injured while taking part in athletic activities.

5. "We" do not pay for medical expenses for "bodily injury" included in the "products/completed work hazard".

6. "We" do not pay for medical expenses for "bodily injury" to "your" members if "you" are a club.

7. "We" do not pay for medical expenses for "bodily injury" to a guest of a hotel, motel, or tourist court owned or operated by "you" or on "your" behalf.

8. "We" do not pay for medical expenses for "bodily injury" to a person if benefits are provided or required to be provided under any workers' compensation, nonoccupational disability, occupational disease, or like law.

9. "We" do not pay for medical expenses for "bodily injury" to a:

   a. student or camper enrolled in a program of any facility owned or operated by "you" or on "your" behalf; or

   b. patient or inmate being treated or detained in a facility owned or operated by "you" or on "your" behalf.

---

**WHAT MUST BE DONE IN CASE OF LOSS**

1. **Notice** -

   a. In the case of an "occurrence", or if an "insured" becomes aware of anything that indicates that there might be a claim under the Commercial Liability Coverage, "you" must arrange for prompt notice to be given to "us" or "our" agent. Notice to "our" agent is notice to "us".

   b. The notice to "us" must state:

      1) the "insured's" name;

      2) the policy number;

      3) the time, the place, and the circumstances of the "occurrence", the offense, or the situation that indicates that there might be a claim; and

      4) the names and addresses of all known and potential claimants and witnesses.

2. **Cooperation** - All "insureds" involved with an "occurrence" or an offense must cooperate with "us" in performing all acts required by the Commercial Liability Coverage.

3. **Volunteer Payments** - An "insured" must not make payments or assume obligations or other costs except at the "insured's" own cost. This does not apply to first aid to others at the time of "bodily injury".

4. **Other Duties** -

   a. If a claim is made or suit is brought, the "insured" must:

      1) promptly send to "us" copies of all legal papers, demands, and notices; and

      2) at "our" request, assist in:

         a) a settlement;

         b) the conduct of suits. This includes the attendance at trials or hearings;

         c) the enforcing of rights against all parties who may be liable to an "insured" for the injury or damage;

         d) the securing of and giving of evidence; and

         e) obtaining the attendance of all witnesses.

   b. In the case of a medical payments loss:

      1) the injured person (or one acting on such person's behalf) must:

         a) give "us" written proof of claim (under oath if requested) as soon as practicable; and

         b) give "us" permission to get copies of the medical records;

      2) the injured person must submit to medical exams by doctors chosen by "us" when and as often as "we" may reasonably require.

## HOW MUCH WE PAY

1. The "limits", shown on the "declarations" and subject to the following conditions, are the most "we" pay regardless of the number of:

   a. "insureds" under the Commercial Liability Coverage;

   b. persons or organizations who sustain injury or damage; or

   c. claims made or suits brought.

   The payment of a claim under Coverage M does not mean that "we" admit "we" are liable under other coverages.

2. The General Aggregate Limit is the most "we" will pay during a policy period for the sum of:

   a. all "damages" under Coverage L, except "damages" due to "bodily injury" or "property damage" included under Coverage N;

   b. all medical expenses under Coverage M; and

   c. all "damages" under Coverage P.

3. The Products/Completed Work Hazard Aggregate Limit is the most "we" will pay during a policy period for "damages" due to "bodily injury" or "property damage" included under Coverage N.

4. The Each Occurrence Limit, subject to the General Aggregate Limit and the Products/Completed Work Hazard Aggregate Limit, is the most "we" will pay for the total of:

   a. "damages" under Coverages L, N, O, and P; and

   b. medical expenses under Coverage M;

   due to all "bodily injury" and "property damage" arising out of a single "occurrence" or due to all "personal and advertising injury" caused by offenses sustained by one person or organization.

5. Subject to the Each Occurrence Limit, "our" "limit" for "property damage" covered under Coverage O is $50,000 for each "occurrence" unless otherwise shown on the "declarations".

6. Subject to the General Aggregate Limit and the Each Occurrence Limit, the Coverage M Limit is the most that "we" will pay under Coverage M for all medical expenses because of "bodily injury" sustained by any one person.

7. The General Aggregate Limit and the Products/Completed Work Hazard Aggregate Limit apply separately to each consecutive 12-month period beginning with the inception date of the Commercial Liability Coverage shown on the "declarations". They also apply separately to any remaining policy period of less than 12 months, unless the Commercial Liability Coverage has been extended after it was written. In that case, the additional period will be considered part of the last preceding period for the purpose of determining "limits".

## CONDITIONS

1. **Bankruptcy** - Bankruptcy or insolvency of an "insured" does not relieve "us" of "our" obligations under Commercial Liability Coverage.

2. **Insurance Under More Than One Policy** - (Applies to all coverages except Coverage M - Medical Payments.)

   a. Insurance under this Commercial Liability Coverage is primary except as provided under paragraph 2.c. below, or unless otherwise stated. The amount of "our" liability is not reduced because of other insurance which applies to the loss on other than a primary basis.

   b. If the other insurance is also primary, "we" will share in the loss as follows:

      1) If the other insurance provides for contribution by equal shares, "we" will pay equal amounts with other insurers until:

         a) the lowest applicable "limit" under any one policy is reached; or

         b) the full amount of the loss is paid.

         If part of the loss remains unpaid, "we" will pay an equal share with the other insurers until the full amount of the loss is paid, or until "we" have paid "our" "limit" in full.

      2) If the other insurance does not provide for contribution by equal shares, "we" will pay, up to "our" "limit", no more than that proportion of the loss to which the applicable "limit" under this policy for such loss bears to the total applicable "limit" for all insurance against the loss.

   c. Insurance under this Commercial Liability Coverage is excess over any other insurance:

      1) if the other insurance, whether primary, excess, contingent, or on any other basis, provides:

         a) fire, extended coverage, builders' risk, installation risk, or similar coverage for "your work"; or

         b) fire insurance for premises rented to "you";

      2) if the other insurance applies to any loss arising out of the maintenance or use of aircraft, "autos", or watercraft which may be covered by this policy; or

      3) if the other insurance is primary and covers "your" liability for "damages" arising out of the premises or operations for which "you" have been added as an additional insured by attachment of an endorsement.

   d. When this insurance is excess over any other insurance:

      1) "we" will have no duty to defend any claim or suit that any other insurer has a duty to defend. If no other insurer defends, "we" will do so. However, "we" will be entitled to the "insured's" rights against all those other insurers.

      2) "we" will pay "our" share of the amount of loss, if any, that exceeds the sum of:

         a) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

         b) the total of all deductibles and self-insured amounts required by such other insurance.

         "We" will share the remaining loss with any other insurance that is not described in this excess insurance provision and was not bought specifically to apply in excess of the "limits" shown on the "declarations" of this Commercial Liability Coverage.

3. **Motor Vehicle Financial Responsibility Certification** - When Commercial Liability Coverage is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided for "bodily injury" liability or "property damage" liability will comply with the provisions of the law to the extent of the coverage and "limits" of insurance required by that law. With respect to mobile equipment to which this insurance applies, "we" will provide any liability, uninsured motorists, underinsured motorist, no-fault or other coverage required by any motor vehicle law. "We" will provide the required "limits" for those coverages.

4. **Premium** - If the premium is shown on the "declarations" as a deposit premium, "we" will compute the final earned premium at the end of each audit period shown on the "declarations". If it is more than the deposit premium paid by "you", "we" will bill "you" for the difference. Any additional premium owed to "us" is due on the due date that appears on the billing notice. If the final earned premium is less than the deposit premium paid by "you", "we" will return the difference to "you". "You" must maintain records of the information that is necessary for computing the premium. Copies of the records must be sent to "us" at the end of the audit period or when requested by "us".

5. **Separate Insureds** - Coverage provided under the Commercial Liability Coverage applies separately to each "insured" against whom claim is made or suit is brought. This does not affect the "limits" stated under How Much We Pay.

6. **Subrogation** - If "we" pay under the Commercial Liability Coverage, "we" may require from an "insured" an assignment of any right of recovery. "We" are not liable under the Commercial Liability Coverage if any "insured" has impaired "our" right to recover. An "insured" may waive its right to recover, in writing, before an "occurrence" takes place.

7. **Suit Against Us** - No suit may be brought against "us" unless:

   a. all the "terms" of the Commercial Liability Coverage have been complied with; and

   b. the amount of the "insured's" liability has been determined by:

      1) a final judgment against an "insured" as a result of a trial; or

      2) a written agreement by the "insured", the claimant, and "us".

No person has a right under the Commercial Liability Coverage to join "us" or implead "us" in actions that are brought to determine an "insured's" liability.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This insurance does not apply:

1. under any liability coverage, to "bodily injury" or "property damage":

   a. with respect to which an "insured" under the policy is also an "insured" under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its "limit" of liability; or

   b. resulting from the "hazardous properties" of "nuclear material" and with respect to which:

      1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereto; or

      2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

3. under any liability coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

   a. the "nuclear material":

      1) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured"; or

      2) has been discharged or dispersed therefrom;

b. the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, stored, processed, transported, or disposed of by or on behalf of an "insured"; or

c. the "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (c.) applies only to "property damage" to such "nuclear facility" and any property thereat.

## DEFINITIONS

The following definitions apply to the Nuclear Energy Liability Exclusion:

1. "Hazardous Properties" - These include radioactive, toxic, or explosive properties.

2. "Nuclear Material" - This means "source material", "special nuclear material", or "by-product material".

3. "Source Material", "Special Nuclear Material", "By-product Material" - These have the meanings given them in the Atomic Energy Act of 1954, or in any law amendatory thereof.

4. "Spent Fuel" - This means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

5. "Waste" - This means any "waste" material:

   a. containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

   b. resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

6. "Nuclear Facility" - This means:

   a. any "nuclear reactor".

   b. any equipment or device designed or used for:

      1) separating the isotopes of uranium or plutonium;

      2) processing or utilizing "spent fuel"; or

      3) handling, processing, or packaging "waste".

   c. any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium-233 or any combination thereof, or more than 250 grams of uranium-235.

   d. any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such sites, and all premises used for such operations.

7. "Nuclear Reactor" - This means any apparatus designed or used:

   a. to sustain nuclear fission in a self-supporting chain reaction; or

   b. to contain a critical mass of fissionable material.

8. "Property Damage" - This includes all forms of radioactive contamination of property.

amends the policy

**- PLEASE READ IT CAREFULLY -**

# EQUIPMENT BREAKDOWN

(The entries required to complete this endorsement will be shown below or on the "declarations".)

**DEDUCTIBLE**

The following deductible amount will apply to each loss after all other adjustments have been made.        $

---

### AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described in this endorsement during the policy period. This coverage is subject to the "terms" of this endorsement, the Common Policy Conditions, and the "terms" applicable to the Property Coverage Section of this policy, except as provided below.

---

### DEFINITIONS

1. The definition of "restoration period" is deleted and replaced by the following definition with respect to the coverage provided by this endorsement:

   a. "Restoration period" means the time it should reasonably take to resume "your" normal business activities starting from the date of loss at the described premises caused by an "accident", and ending on the date the property should be rebuilt, repaired, or replaced. This is not limited by the expiration date of the policy.

   This does not include any increase in time due to the enforcement of any ordinance, law, or decree that regulates or requires:

   1) the construction, use, repair, or demolition of any property;

   2) the testing, evaluating, observing, or recording the existence, level, or effects of "pollutants"; or

   3) the clean up, removal, containment, treatment, detoxification, or neutralization of "pollutants".

2. The following additional definitions apply to the coverage provided by this endorsement:

   a. "Accident" means direct physical loss consisting of:

   1) mechanical breakdown;

   2) rupturing or bursting of moving parts of machinery caused by centrifugal force;

   3) loss caused by arcing or electrical currents other than lightning;

   4) explosion of steam boilers, steam pipes, steam turbines, or steam engines that "you" own or lease or that are operated under "your" control;

   5) loss to steam boilers, steam pipes, steam turbines, or steam engines caused by any condition or occurrence within such equipment; or

   6) loss to hot water boilers or heaters caused by any condition or occurrence within such equipment.

   b. "Covered equipment", unless otherwise specified in the "declarations", means property covered under Coverage A or Coverage B built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission, or utilization of energy.

   "Covered equipment" does not mean:

   1) equipment manufactured by "you" for sale;

   2) cabinets or compartments that cover or house "covered equipment";

---

BP 650 03 00      Copyright, American Association of Insurance Services, 2000      AAIS

3) "computer" and "electronic media and records" unless used to control or operate other "covered equipment"; however, Computer Coverage is provided for "computer" and "electronic media and records" under Additional Coverages.

4) buildings or structures, including air supported buildings or structures;

5) foundations that supported "covered equipment";

6) sewer and other underground piping and vessels, water piping, or sprinkler system piping. However, "covered equipment" does include:

   a) boiler feedwater and condensate return piping; and

   b) water piping for water heating, air conditioning, or refrigeration systems;

7) construction or excavation equipment; or

8) vehicles or self-propelled machines. However, any property that is stationary, permanently installed at a covered location, and receives electrical power from an external power supplier will not be considered a vehicle or self-propelled machine.

c. "Perishable stock" means personal property preserved and maintained under controlled conditions and susceptible to loss or damage if the controlled conditions change.

## PROPERTY COVERED

1. "We" cover direct physical loss to property covered under Coverage A and Coverage B caused by a covered peril, as described in the Perils Covered section of this endorsement.

2. When this endorsement is attached to form BP-200, item 2., Boilers, under Additional Property Excluded and Limitations, does not apply with respect to the coverage provided by this endorsement.

## ADDITIONAL COVERAGES

"We" also provide the following additional coverages for loss caused by or resulting from an "accident" to "covered equipment".

The "limit" for each additional coverage is a part of, and not in additional to, the "limit" for the covered property.

1. **CFC Refrigerants** – "We" pay for the additional cost to repair or replace covered property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances.

   Additional costs means those in excess of what would have been required to repair or replace covered property, had no CFC refrigerant been involved.

   Subject to the "limit" for this additional coverage, "we" pay no more than the least of the following:

   a. the cost to repair the damaged property and replace any lost CFC refrigerant;

   b. the cost to repair the damaged property, retrofit the system to accept a non-CFC refrigerant, and charge the system with a non-CFC refrigerant; or

   c. the cost to replace the system with one using a non-CFC refrigerant.

   "We" also pay for additional loss as described under the Spoilage or Loss of Income Coverages provided by this endorsement, caused by the presence of a refrigerant containing CFC substances.

   The most "we" pay for loss or damage under this coverage, including Spoilage and Loss of Income, is $25,000.

2. **Computer Coverage** – "We" pay for direct physical loss or damage to "your" "computer" and "electrical media and records".

   The most "we" pay for loss or damage under this coverage, including Loss of Income, is $25,000.

   "Computers" used primarily to control or operate "covered equipment" will not be subject to the Computer Coverage "limit".

Copyright, American Association of Insurance Services, 2000

BP 650 03 00

AAIS

3. **Expediting Expenses** – "We" pay for reasonable extra costs to expedite permanent repairs or permanent replacement and make temporary repairs to damaged covered property.

The most "we" pay under this coverage is $25,000.

4. **Pollutants** – "We" pay for the additional cost to repair or replace covered property because of contamination by "pollutants". This includes the additional expenses to clean up or dispose of contaminated property.

Additional costs mean those in excess of what would have been required to repair or replace damage to covered property, had no "pollutants" been involved.

The most "we" will pay for loss or damage under this coverage, including Spoilage and Loss of Income, is $25,000.

5. **Spoilage** –

a. "We" pay for loss to "your" "perishable stock" due to spoilage. "We" also pay:

1) for loss to "your" "perishable stock" caused by contamination from the release of a refrigerant, including but not limited to ammonia; and

2) any necessary expenses "you" incur to reduce the amount of loss under this coverage. "We" pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

b. "We" also pay for loss to "your" "perishable stock" caused by an "accident" to property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission, or utilization of energy and which is owned by a utility, a landlord, or another supplier who provides "you" with:

1) electrical power, gas, or water;

2) communications;

3) waste disposal; or

4) air conditioning, refrigeration, heating, air or steam.

c. If "you" are able to replace the "perishable stock", "our" payment will be determined in accordance with the Valuation of Property Losses provision. If "you" are not able to replace the "perishable stock" before its anticipated sale, the amount of "our" payment will be determined on the basis of the selling price of the "perishable stock" at the time of the "accident", less discounts and expenses "you" otherwise would have had.

d. "We" do not pay for loss that results from "your" failure to use all reasonable means to protect "perishable stock" from loss or damage following an "accident".

The most "we" pay for loss or damage under this coverage is $25,000.

## EXTENSION OF COVERAGE C

"We" provide the following extensions of Coverage C – Loss of Income.

1. **Loss of Income** – The coverage provided under Coverage C – Loss of Income is extended to provide coverage during the "restoration period" when "your" normal business activities are interrupted due to an "accident" to "covered equipment" during the policy period.

2. **Service Interruption** – The coverage provided under Coverage C – Loss of Income is also extended to pay for "your" loss of earnings and the necessary extra expense "you" incur during the period when "your" normal business operations are interrupted as a result of an "accident" to property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission, or utilization of energy and which is owned by a utility, a landlord, or another supplier who provides "you" with:

a. electrical power, gas, or water;

b. communications;

c. waste disposal; or

d. air conditioning, refrigeration, heating, air, or steam.

The period of interruption is the time beginning when service is interrupted and ending when service has been completely restored to the premises.

When a "limit" is shown for Coverage C, these extensions do not increase the "limit".

BP 650 03 00          Copyright, American Association of Insurance Services, 2000          AAIS

## PERILS COVERED

"We" cover risks of direct physical loss caused by or resulting from an "accident" to "covered equipment" unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

"We" do not pay for loss or damage under the coverage provided by this endorsement if one or more of the following exclusions apply to the loss:

1. Except as stated under items 2. through 5. below, the covered provided by this endorsement is subject to the "terms" of Perils Excluded in form BP-200.

2. **Certain Computer – Related Losses** – With respect to the coverage provided by this endorsement, the next to the last paragraph in Certain Computer – Related Losses under Perils Excluded is deleted and replaced with the following:

   However, if excluded loss or damage, as described in Paragraph a. above results in an "accident", "we" will pay for the loss or damage caused by that "accident".

3. **Earth Movement or Volcanic Eruption** – "We" do not pay for loss due to an "accident" caused by any earth movement (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano. Earth movement includes, but is not limited to, earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting or earth.

   This exclusion applies regardless of other caused or events that contribute to or aggravate the loss, whether such causes or events acts to produce the loss before, at the same time as, or after the excluded cause or event.

4. **Water** – With respect to the coverage provided by this endorsement, Water under Perils Excluded is amended by the following addition:

   "We" do pay for the direct expenses to dry out electrical "covered equipment" required as a result of water.

5. "Fungus", Wet Rot, Dry Rot, or Bacteria – "We" do not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident":

   Any mold, "fungus", mildew or yeast, whether or not such matter is living, including any spores, toxins, vapor, gas, emissions or substances produced by or emanating from such mold, "fungus", mildew or yeast. This includes, but is not limited to, costs to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of such mold, "fungus", mildew, or yeast. However, we will pay for personal property that is "perishable stock", to the extent that spoilage of such property is covered under Spoilage coverage.

## ADDITIONAL EXCLUSIONS

Except as stated below, the covered provided by this endorsement is subject to the "terms" of Additional Exclusions in form BP-200.

1. The following provisions under Additional Exclusion do not apply with respect to the coverage provided by this endorsement:

   a. Explosion;

   b. Electrical Currents; and

   c. Mechanical Breakdown.

2. The following provisions under Additional Exclusions are deleted and replaced with respect to the coverage provided by this endorsement:

   a. **Animals** – "We" do not pay for loss caused by nesting or infestation, or discharge or release of waste products or secretions of animals, including birds or insects. "We" do pay for any resulting loss caused by an "accident".

   b. **Contamination or Deterioration** – "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, "fungus", mildew, mold, rot, rust, or any quality, fault, or weakness in property that causes it to damage or destroy itself. "We" do pay for any resulting loss caused by an "accident".

Copyright, American Association of Insurance Services, 2000

BP 650 03 00                                                                 AAIS

c. **Errors or Omissions** – "We" do not pay for loss caused by errors or omissions in :

   1) programming, processing, or storing data, as described under "electrical media and records" or in "computer" operations; or

   2) processing or copying "valuable papers and records"; or

   3) giving improper instructions.

   "We" do pay for any resulting loss caused by an "accident".

d. **Installation, Testing, Repair** – "We" do not pay for loss caused by errors or deficiency in design, installation, testing, maintenance, modification, or repair of "your" "computer" system including "electronic media and records".

   "We" do pay for any resulting loss caused by an "accident".

e. **Wear and Tear** – "We" do not pay for loss caused by wear and tear, marring, or scratching. "We" do pay for any resulting loss caused by an "accident".

3. The following exclusion is added with respect to the coverage for Spoilage and Service Interruption provided by this endorsement:

   "We" do not pay for loss caused by: aircraft; civil commotion; explosion (except for steam or centrifugal explosion); falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; or windstorm.

## HOW MUCH WE PAY

The following deductible provision replaces any other deductible with respect to the coverage provided by this endorsement:

**Deductible** – The deductible amount shown on the schedule above will apply to each loss after all other adjustments have been made.

## ADDITIONAL CONDITIONS

1. **Jurisdictional Inspections** – If any property that is "covered equipment" under the Equipment Breakdown coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, "we" agree to perform such inspection on "your" behalf.

2. **Suspension** – When any "covered equipment" is discovered to be in or exposed to a dangerous situation or condition, any representative of "ours" may immediately suspend the insurance coverage against loss from an "accident" to that equipment. "We" can do this by mailing or delivering a written notice of suspension to "your" address as shown in the "declarations", or at the address where the equipment is located.

   Once so suspended, "your" insurance can be reinstated only by written notice from "us". If "your" insurance is so suspended, "you" will get a pro rata premium refund. But the suspension is effective even if "we" have not yet offered or made a refund.

3. **Environmental, Safety and Efficiency Improvements** – If "covered equipment" requires replacement due to an "accident", "we" pay "your" additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

   However, "we" will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not increase any of the applicable "limits". This condition does not apply to any property valued on an Actual Cash Value basis.

Copyright, American Association of Insurance Services, 2000

BP 650 03 00                                                                                 AAIS

This endorsement changes the Liability Coverage provided by this policy.

**- PLEASE READ THIS CAREFULLY -**

## LEAD LIABILITY EXCLUSION

The following additional exclusions amend the liability coverage of this policy:

"We" do not pay for:

1. actual or alleged "bodily injury" arising out of the ingestion, inhalation, or absorption of lead in any form;

2. actual or alleged "property damage" or "personal and advertising injury" arising out of any form of lead;

3. any loss, cost, or expense arising out of any request, demand, or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead; or

4. any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of lead.

**- PLEASE READ THIS CAREFULLY -**

# PUNITIVE DAMAGES EXCLUSION
# ILLINOIS

The Commercial Liability Coverage is amended as follows:

---

**EXCLUSIONS**

---

The following exclusion is added:

"We" do not pay for punitive, exemplary, or vindictive "damages", except if a suit is brought against the "insured" regarding a claim for acts or alleged acts falling within the Commercial Liability Coverage, seeking both compensatory and punitive or exemplary "damages", the "we" will provide a defense without liability for such punitive or exemplary "damages".

GL-894
Ed. 2.1

Copyright MCMXCV, American Association of Insurance Services

AAIS

This endorsement changes
the policy.

**BP 663A 04 03**
**AAIS**

- PLEASE READ THIS CAREFULLY -

# KNOWN INJURY OR DAMAGE AMENDMENTS

The Commercial Liability Coverage is amended as follows:

1. Under Definitions, the following definition is added:

   "Designated insured" means:

   a. "you" and "your" spouse, but only with respect to the conduct of a business of which "you" are the sole owner, if "you" are shown on the "declarations" as an individual;

   b. "you" and all "your" partners or members and their spouses, but only with respect to the conduct of "your" business, if "you" are shown on the "declarations" as a partnership or a joint venture;

   c. "you" and all "your" members and managers, but only while acting within the scope of their duties, if "you" are shown on the "declarations" as a limited liability company; and

   d. "you" and all "your" executive officers and directors, but only while acting within the scope of their duties, if "you" are shown on the "declarations" as an organization (other than a partnership, joint venture, or limited liability company). It also includes "your" stockholders, but only for their liability as such; or

   e. any "employee" who is authorized to give or receive notice of an "occurrence" or a claim.

2. Under Principal Coverages, Coverage L and, if applicable, Coverage N are amended by the addition of the following:

   This insurance applies only to:

   a. "Bodily injury" or "property damage" which is not a continuation of "bodily injury" or "property damage" that was known by a "designated insured" prior to the inception date of the policy period. If a "designated insured" knew, as stated under the Knowledge of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period, that "bodily injury" or "property damage" had occurred, any continuation of such "bodily injury" or "property damage" will be deemed to have been known by the "designated insured" prior to the inception date of the policy period.

   b. "Bodily injury" or "property damage" that occurs during the policy period and which is not a continuation of "bodily injury" or "property damage" which was known by a "designated insured", as stated under the Knowledge of Bodily Injury or Property Damage Condition, to have occurred prior to the inception date of this policy period, will include any continuation of such "bodily injury" or "property damage" after the end of this policy period.

3. Under Defense Coverage, the following is added:

   "We" have no duty to defend a suit or claim seeking "damages" because of "bodily injury" or "property damage" which was known by a "designated insured", as stated under the Knowledge of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period.

4. Under Conditions, the following condition is added:

   **Knowledge of Bodily Injury or Property Damage** – Knowledge of "bodily injury" or "property damage" will be deemed to have occurred at the earliest of the following times:

   a. when a suit, claim, or demand for "damages" alleging "bodily injury" or "property damage" is received by any "designated insured";

   b. when any "designated insured" reports the "bodily injury" or "property damage" to "us" or any other insurer; or

   c. when any "designated insured" becomes aware of anything that indicates that "bodily injury" or "property damage" may have occurred or is occurring.

**BP 663A 04 03**    Copyright, American Association of Insurance Services, 2000    **AAIS**